# EXHIBIT 1

*22-000452948*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

SALTPONDS CONDOMINIUM ASSOCIATION,
INC.

PLAINTIFF(S)

VS.

ROCKHILL INSURANCE COMPANY, ET AL.

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| **CASE #:** | **22-CA-000632-K** |
| **COURT:** | **16TH JUDICIAL DISTRICT** |
| **COUNTY:** | **MONROE** |
| **DFS-SOP #:** | 22-000452948 |

# **NOTICE OF SERVICE OF PROCESS**

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said  process was received in my office by ELECTRONIC DELIVERY on Tuesday, November 29, 2022 and a copy was forwarded by ELECTRONIC DELIVERY on Wednesday, November 30, 2022 to the designated agent for the named entity as shown below.


ROCKHILL INSURANCE COMPANY
LAURANN M. SAGE
P.O. BOX 182822
COLUMBUS, OH 43218



**\*Our office will only serve the initial process(Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule  #1.080**

Jimmy Patronis
Chief Financial Officer


JOHN M. SIRACUSA
ATTORNEY
JANSSEN, SIRACUSA & KEEGAN PLLC
120 S. OLIVE AVENUE
SUITE 504
WEST PALM BEACH, FL 33401

KS1

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CASE NO.: 22 CA 632 K

SALTPONDS CONDOMINIUM ASSOCIATION,
INC.

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY; COLONY
INSURANCE COMPANY; FIRST SPECIALTY
INSURANCE CORP.; HALLMARK SPECIALTY
INSURANCE COMPANY/LLOYD'S OF
LONDON; HOMELAND INSURANCE
COMPANY OF NEW YORK; LEXINGTON
INSURANCE COMPANY; LIBERTY SURPLUS
INSURANCE CORPORATION; LLOYD'S OF
LONDON; MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA; RSUI INDEMNITY;
SCOTTSDALE INSURANCE COMPANY; and
UNITED NATIONAL INSURANCE COMPANY,

      Defendants.

_____/

## SUMMONS

THE STATE OF FLORIDA
To Each Sheriff of the State:

      YOU ARE HEREBY COMMANDED to serve this Summons, together with a copy of the
Complaint in this action on Defendant:

**ROCKHILL INSURANCE COMPANY**
**C/O REGISTERED AGENT, CHIEF FINANCIAL OFFICER**
**200 E. GAINES STREET**
**TALLAHASSEE, FL 32399**

      Defendant is required to serve written defenses to the Complaint on Plaintiff's Attorney,
whose address is:

**JOHN M. SIRACUSA, ESQ.**
**Janssen, Siracusa & Keegan PLLC**
**120 S. Olive Avenue, Suite 504**
**West Palm Beach, FL 33401**
**(561) 420-0583**

*Summons*

Within 20 days after service of this summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of the Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a Default will be entered against that Defendant for the relief demanded in the Complaint.

## IMPORTANT

A lawsuit has been filed against you. You have twenty (20) calendar days after this Summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response in time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named above.

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contester la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defense, debe presenter su respueta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demand a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

## IMPORTANT

Des poursuites Judiciaries ont ete enterprises contre vous. Vous avez vingt (20) jours consecutifs a partir de la date de l'assignation de cet'te citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coupe de telephoneest insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier cidessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argentm et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocet. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

*Summons*

    Si vous choisissez de deposer vous-meme une reponse ecritem il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney: (Plaignant ou a son avocet) Nomme ci-dessous.

    WITNESS my hand and the Seal of said Court.

KEVIN MADOK

CLERK OF COURT

BY: *[signature]*

Deputy Clerk

DATE: SEPT 15, 2022

IN THE CIRCUIT COURT OF THE
16TH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CASE NO.: 22-CA-000632-K

SALTPONDS CONDOMINIUM ASSOCIATION,
INC.

      Plaintiff,

v.

ROCKHILL INSURANCE COMPANY; COLONY
INSURANCE COMPANY; FIRST SPECIALTY
INSURANCE CORP.; HALLMARK SPECIALTY
INSURANCE       COMPANY/LLOYD'S       OF
LONDON;       HOMELAND       INSURANCE
COMPANY OF NEW YORK; LEXINGTON
INSURANCE COMPANY; LIBERTY SURPLUS
INSURANCE   CORPORATION;   CERTAIN
UNDERWRITERS   AT   LLOYD'S,   LONDON
SUBSCRIBING    TO    CERTIFICATE    OF
INSURANCE   NO.   EB3R16-10008;   MITSUI
SUMITOMO   INSURANCE   COMPANY   OF
AMERICA; RSUI INDEMNITY; SCOTTSDALE
INSURANCE     COMPANY;     and     UNITED
NATIONAL INSURANCE COMPANY,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, SALTPONDS CONDOMINIUM ASSOCIATION, INC. ("PLAINTIFF"), sues

Defendants, ROCKHILL INSURANCE COMPANY ("ROCKHILL"), COLONY INSURANCE

COMPANY ("COLONY"), FIRST SPECIALTY INSURANCE CORP. ("FIRST SPECIALTY"),

HALLMARK   SPECIALTY   INSURANCE   COMPANY/LLOYD'S   OF   LONDON

("HALLMARK"),   HOMELAND   INSURANCE   COMPANY   OF   NEW   YORK

("HOMELAND"), LEXINGTON INSURANCE COMPANY ("LEXINGTON"), LIBERTY

SURPLUS INSURANCE CORPORATION ("LIBERTY"), CERTAIN UNDERWRITERS AT

LLOYD'S, LONDON, SUBSCRIBING TO CERTIFICATE OF INSURANCE NO. EB3R16-10008, ("LLOYD'S"), MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA ("MITSUI"), RSUI INDEMNITY ("RSUI"), SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE") and UNITED NATIONAL INSURANCE COMPANY ("UNITED") (collectively the "DEFENDANTS"), and states:

## **GENERAL ALLEGATIONS**

1.      This is an action for declaratory relief pursuant to Chapter 86 of the Florida Statutes.

2.      At all times material, PLAINTIFF was and is a non-profit condominium association and corporation organized and existing under the laws of the State of Florida and was authorized to do, and is doing business in Key West, Florida.

3.      At all times material, PLAINTIFF is the owner of a residential condominium property located at 3635 - 75 Seaside Drive, Key West, Florida ("Property").

4.      At all times material, DEFENDANTS, were and are commercial residential surplus lines insurers authorized to transact and transacting insurance within the State of Florida.

5.      At all times material, DEFENDANTS provided commercial residential property insurance coverage to property owners residing in Monroe County, Florida, including PLAINTIFF.

6.      On or about March 20, 2017, DEFENDANTS offered to provide the PLAINTIFF with commercial residential property insurance coverage.

7.      On or about March 20, 2017, PLAINTIFF accepted DEFENDANTS' offer of commercial residential property insurance coverage and paid the $114,184.00 premium due DEFENDANTS.

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

8.      DEFENDANTS issued Insurance Policy No. EB3R16-10008, which provides, among other things, commercial residential property insurance coverage to PLAINTIFF for the twelve (12) month period beginning March 20, 2017.  A copy of the Declarations Page and Insurance Policy (collectively "Insurance Contract") is attached as **Composite Exhibit "A."**

9.      Included in the Insurance Contract is an Appendix – Market Security that "sets forth the participating insurers to the coverage provided" in the Insurance Contract. Each of the DEFENDANTS is listed as a participating insurer in the Appendix – Market Security. *See* **Composite Exhibit "A."** The participation of DEFENDANTS is hereafter referred to as the "Skinner Program."

10.     The intent and purpose of the Insurance Contract is to provide commercial residential property insurance coverage to its named insured, PLAINTIFF, for damages caused by named windstorms.

11.     On September 10, 2017, Hurricane Irma made landfall in Monroe County, and caused damage to the Property.

12.     PLAINTIFF timely reported its claim to DEFENDANTS.

13.     The damages suffered by PLAINTIFF are estimated to be $2,717,876.55.

14.     On February 28, 2019, PLAINTIFF demanded an appraisal of its loss in writing.

15.     DEFENDANTS rejected PLAINTIFF's demand for appraisal multiple times.

16.     After each rejection of PLAINTIFF's demand for appraisal, PLAINTIFF continued to cooperate with DEFENDANTS' ongoing investigation and requests for information and documentation.

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

17.     On June 17, 2020, PLAINTIFF brought a federal action seeking specific performance of the appraisal provision of the Insurance Contract and alternative claims for breach of contract.

18.     On October 13, 2020, DEFENDANTS denied coverage for PLAINTIFF's claim.

19.     In March, 2021, ROCKHILL represented that due to other claims within the "Skinner Program", in which ROCKHILL asserts PLAINTIFF's claim is included, ROCKHILL had nearly exhausted its policy limits.

20.     On March 10, 2021, PLAINTIFF amended its complaint in the federal litigation to include the "Skinner Program" insurers identified in the "Appendix – Market Security".

21.     On September 10, 2021, the federal court stayed the action pending appraisal and dismissed all defendants except ROCKHILL.

22.     The appraisal will likely be completed this year, but not before the fifth anniversary of Hurricane Irma.

23.     The "Appendix – Market Security" lists only the percentage of the Overall Limit for which each insurer is responsible.

24.     The program administrator for the "Skinner Program" claimed that the participation of each insurer was layered, not a participation percentage, and thus, these insurers were excess carriers.

25.     Beyond stating that ROCKHILL provided the first layer of coverage under the Insurance Contract, the program administrator for the "Skinner Program" was unable to provide information regarding the layers for any of the excess carriers.

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

26.     Nowhere in the Insurance Contract is there any indication that participation is layered, that the other insurers are excess carriers, or at what amount of loss each insurer's responsibility is triggered.

27.     The program administrator for the "Skinner Program" further claimed that PLAINTIFF's property is one of seven insured properties under the program.

28.     Nowhere in the Insurance Contract is there any indication that PLAINTIFF is one of multiple properties to which ROCKHILL's coverage limit applies.

29.     The program administrator for the "Skinner Program" was unable to explain whether ROCKHILL's coverage limit applies per insured in the program, or whether PLAINTIFF's claim would be aggregated with claims of the other unknown insureds to exhaust ROCKHILL's limit.

30.     Nowhere in the Insurance Contract is there any indication whether ROCKHILL's coverage limit is per insured or is the aggregate of all claims from any insured in the "Skinner Program."

31.     The program administrator for the "Skinner Program" was unable to provide information to PLAINTIFF regarding whether ROCKHILL would continue to defend claims in excess of its limit on behalf of the other insurers in the "Skinner Program" or whether the excess insurer(s) would take a direct participation role.

32.     Nowhere in the Insurance Contract is there any indication which of the "Skinner Program" insurers in the "Appendix – Market Security" would participate in the event ROCKHILL's limit was exceeded, and if so, whether they would take a direct participation role.

33.     The claim that ROCKHILL's limit is nearly exhausted, the language in the Insurance Contract, and the contrary positions taken by DEFENDANTS and the program

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

administrator for the "Skinner Program" have created doubt and uncertainty as to which insurer may be liable to pay for PLAINTIFF's damages.

34.     Venue lies in Monroe County, Florida because, among other things, the Insurance Contract was entered into and provides insurance coverage in Monroe County, Florida.

35.     PLAINTIFF has complied with its obligations under the Insurance Contract.

36.     All conditions precedent to the filing of this action have occurred, have been waived and/or are excused.

## COUNT I
## DECLARATORY JUDGMENT

37.     This is an action by PLAINTIFF against DEFENDANTS for declaratory judgment and supplemental relief, the subject matter of which exceeds $30,000.00 exclusive of interest, costs and attorney's fees, pursuant to Chapter 86, *Florida Statutes*.

38.     PLAINTIFF re-alleges and re-avers the allegations contained in paragraphs 1 through 36 above with the same force and effect as if fully restated and set forth herein.

39.     Because of the conflicts between the Insurance Contract, the positions taken by DEFENDANTS and the program administrator for the "Skinner Program", and because all of the information that may establish the rights, obligations, and duties of PLAINTIFF and DEFENDANTS is in the possession of DEFENDANTS (to the exclusion of PLAINTIFF), PLAINTIFF is uncertain as to its rights, duties, and obligations under the Insurance Contract, the "Skinner Program" and the "Appendix – Market Security."

40.     Plaintiff requires a declaration as to (a) whether each of the DEFENDANTS participates in the "Skinner Program" on a percentage basis or on a layered basis; (b) whether each of the DEFENDANTS participate in the "Skinner Program" as a participating insurer or as an excess carrier; (c) if each of the DEFENDANTS is an excess carrier, what layer does each of the

DEFENDANTS occupy (or, stated differently, at what dollar amount is each of the DEFENDANTS' obligation to pay PLAINTIFF's claim triggered); (d) whether PLAINTIFF is one of multiple properties to which the "Skinner Program" applies, and if so, whether any of those properties made claims that reduce the payment obligation of ROCKHILL to PLAINTIFF; (e) whether ROCKHILL's coverage limit applies per insured in the "Skinner Program" or whether it applies in the aggregate to all insureds; and (f) whether ROCKHILL continues to be responsible for defending PLAINTIFF's claim even if its limit of insurance is exhausted or whether the other DEFENDANTS assume a direct participation role under the Insurance Contract.

41.    DEFENDANTS' actions, including their participation in the "Skinner Program" and their failure to provide transparency to PLAINTIFF regarding the guidelines of the "Skinner Program" have raised doubt and insecurity in PLAINTIFF regarding the validity, applicability, and enforceability of the Insurance Contract, the "Skinner Program", and the "Appendix – Market Security," specifically, (a) whether each of the DEFENDANTS participates in the "Skinner Program" on a percentage basis or on a layered basis; (b) whether each of the DEFENDANTS participate in the "Skinner Program" as a participating insurer or as an excess carrier; (c) if each of the DEFENDANTS is an excess carrier, what layer does each of the DEFENDANTS occupy (or, stated differently, at what dollar amount is each of the DEFENDANTS' obligation to pay PLAINTIFF's claim triggered); (d) whether PLAINTIFF is one of multiple properties to which the "Skinner Program" applies, and if so, whether any of those properties made claims that reduce the payment obligation of ROCKHILL to PLAINTIFF; (e) whether ROCKHILL's coverage limit applies per insured in the "Skinner Program" or whether it applies in the aggregate to all insureds; and (f) whether ROCKHILL continues to be responsible for defending PLAINTIFF's claim even

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

if its limit of insurance is exhausted or whether the other DEFENDANTS assume a direct participation role under the Insurance Contract.

42.     PLAINTIFF is entitled to a declaratory judgment establishing (a) whether each of the DEFENDANTS participates in the "Skinner Program" on a percentage basis or on a layered basis; (b) whether each of the DEFENDANTS participates in the "Skinner Program" as a participating insurer or as an excess carrier; (c) if each of the DEFENDANTS is an excess carrier, what layer does each of the DEFENDANTS occupy (or, stated differently, at what dollar amount is each of the DEFENDANTS' obligation to pay PLAINTIFF's claim triggered); (d) whether PLAINTIFF is one of multiple properties to which the "Skinner Program" applies, and if so, whether any of those properties made claims that reduce the payment obligation of ROCKHILL to PLAINTIFF; (e) whether ROCKHILL's coverage limit applies per insured in the "Skinner Program" or whether it applies in the aggregate to all insureds; and (f) whether ROCKHILL continues to be responsible for defending PLAINTIFF's claim even if its limit of insurance is exhausted or whether the other DEFENDANTS assume a direct participation role under the Insurance Contract.

43.     PLAINTIFF's rights are dependent upon the facts set forth herein and the law applicable to those facts.

44.     PLAINTIFF and DEFENDANTS have present, actual, adverse and antagonistic interests in the validity, applicability, and enforceability of the Insurance Contract, the "Skinner Program," and the "Appendix – Market Security" and (a) whether each of the DEFENDANTS participate in the "Skinner Program" on a percentage basis or on a layered basis; (b) whether each of the DEFENDANTS participate in the "Skinner Program" as a participating insurer or as an excess carrier; (c) if each of the DEFENDANTS is an excess carrier, what layer does each of the

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

DEFENDANTS occupy (or, stated differently, at what dollar amount is each of the DEFENDANTS' obligation to pay PLAINTIFF's claim triggered); (d) whether PLAINTIFF is one of multiple properties to which the "Skinner Program" applies, and if so, whether any of those properties made claims that reduce the payment obligation of ROCKHILL to PLAINTIFF; (e) whether ROCKHILL's coverage limit applies per insured in the "Skinner Program" or whether it applies in the aggregate to all insureds; and (f) whether ROCKHILL continues to be responsible for defending PLAINTIFF's claim even if its limit of insurance is exhausted or whether the other DEFENDANTS assume a direct participation role under the Insurance Contract.

45.     The PLAINTIFF's and DEFENDANTS' adverse and antagonistic interests are before this Court by proper process. The relief PLAINTIFF seeks is not the mere rendering of legal advice.

46.     PLAINTIFF has a bona fide, present, and practical need for a declaration of its rights under the Insurance Contract, the "Skinner Program", and the "Appendix – Market Security."

WHEREFORE, Plaintiff, SALTPONDS CONDOMINIUM ASSOCIATION, INC., requests that this Court enter a declaratory judgment against Defendants, ROCKHILL INSURANCE COMPANY, COLONY INSURANCE COMPANY, FIRST SPECIALTY INSURANCE CORP., HALLMARK SPECIALTY INSURANCE COMPANY/LLOYD'S OF LONDON, HOMELAND INSURANCE COMPANY OF NEW YORK, LEXINGTON INSURANCE COMPANY, LIBERTY SURPLUS INSURANCE CORPORATION, CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO CERTIFICATE OF INSURANCE NO. EB3R16-10008, MITSUI SUMITOMO INSURANCE COMPANY OF AMERICA, RSUI INDEMNITY, SCOTTSDALE INSURANCE COMPANY, and UNITED

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

NATIONAL INSURANCE COMPANY, determining:

(a) whether each of the DEFENDANTS participate in the "Skinner Program" on a percentage basis or on a layered basis;

(b) whether each of the DEFENDANTS participate in the "Skinner Program" as a participating insurer or as an excess carrier;

(c) if each of the DEFENDANTS is an excess carrier, what layer does each of the DEFENDANTS occupy (or, stated differently, at what dollar amount is each of the DEFENDANTS' obligation to pay PLAINTIFF's claim triggered);

(d) whether PLAINTIFF is one of multiple properties to which the "Skinner Program" applies, and if so, whether any of those properties made claims that reduce the payment obligation of ROCKHILL to PLAINTIFF;

(e) whether ROCKHILL's coverage limit applies per insured in the "Skinner Program" or whether it applies in the aggregate to all insureds; and

(f) whether ROCKHILL continues to be responsible for defending PLAINTIFF's claim even if its limit of insurance is exhausted or whether the other DEFENDANTS assume a direct participation role under the Insurance Contract,

and awarding any other, further, and supplemental relief the Court deems just, equitable, and proper.

Dated: September 15, 2022.

*[Signature Page follows]*

JANSSEN, SIRACUSA & KEEGAN PLLC
19 West Flagler Street, Suite 618 * Miami, FL 33130
Telephone (305) 428-2776 * Facsimile (561) 420-0576

JANSSEN, SIRACUSA & KEEGAN PLLC
*Counsel for Plaintiff,*
*Saltponds Condominium Association, Inc.*
19 West Flagler Street, Suite 618
Miami, Florida 33130
Telephone (561) 428-2776
Facsimile (561) 420-0576
Email: jsiracusa@jasilaw.com
Email: jjanssen@jasilaw.com

By: **s/ *John M. Siracusa*_____**
      JOSEPH W. JANSSEN, III
      Florida Bar No. 160067
      JOHN M. SIRACUSA
      Florida Bar No. 159670

# COMPOSITE EXHIBIT "A"



**RYAN™ TURNER SPECIALTY**

5565 Glenridge Connector, Suite 550
Atlanta, GA  30342
Ph: 770-422-0747
www.rtspecialty.com

## Florida Face Page

17052839

**Insured's Name:** Saltponds Condominium Association, Inc

**Policy Number:** EB3R16-10008

**UMR Number:**

**Policy Dates:** 3/20/17 to 3/20/18

**Surplus Lines Agent's Name:** Joanna M Spears

**Surplus Lines Agent's Address:** 5565 Glenridge Connector Suite 550, Atlanta GA 30342

**Surplus Lines Agent's License Number:** W203532

**Producing Agent's Name:** Lou Biron

**Producing Agent's Physical Address:** 1021 Douglas Avenue  Altamonte Springs, FL 32714

"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW.  PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

**Premium:** $114,184.00

**Fees:**
Inspection Fee - Carrier $350.00

**TRIA/Terrorism:**  NOT APPLICABLE

**Taxes:**
Surplus Lines Tax  $5,726.70
State Service Office Fee  $171.80
DEM EMPA Surcharge  $4.00

**Total Cost:** $120,436.50

**Surplus Lines Agent's Countersignature:**   *JoannaMSpears*

_____  "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

_____  "THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

# COMMERCIAL PROPERTY POLICY
## DECLARATIONS

**Policy Number:**

| EB3R16-10008 |

**Renewal of Policy No.**

| NEW |

INSURANCE IS PROVIDED BY

**ROCKHILL INSURANCE COMPANY**
700 West 47th Street, Suite 350
**KANSAS CITY, MISSOURI**

| Named Insured and Mailing Address | Agent |
|---|---|
| Saltponds Condominium Association Inc.<br>3636 Seaside Drive, Suite 103<br>Key West FL 33040 | R-T Specialty LLC<br>5565 Glenridge Connector<br>Atlanta, GA 30342 |

**Policy Period**

Inception Date:   March 20, 2017        Expiration Date:   March 20, 2018

12:01 A.M Standard Time at your mailing address shown above. (unless otherwise endorsed)

Policy Coverage Limit:   $24,850,946

Perils Insured:   All Risks excluding Flood and Earthquake

Covered Property Description:   Property as described on the Statement of Values on file with the Company

Total Insured Values:   As described on the Statement of Values on file with Company

Sublimits:   As further described within the forms attached to this policy and Appendix – A Sublimits

Deductible(s):   As further described within the forms attached to this policy and Appendix – B Deductibles

Coinsurance:   Building/Business Personal Property
1/6th Monthly Indemnity – Business Income/Time Element

Valuation:   Replacement Cost – Building/Business Personal Property
Actual Loss Sustained – Business Income/Time Element

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL OF THE TERMS OF THIS POLICY, WE AGREE TO PROVIDE THE INSURANCE STATED IN THIS POLICY.

| In the event this policy is cancelled, the earned Premium shall be computed in accordance with the terms of the Minimum Earned Premium Endorsement which is attached to this policy. | Policy Premium: | $114,184 |
|---|---|---|
| | Terrorism Premium: | REJECTED |
| | Inspection Fee: | $350 |
| Premium shown is due within **90** days of inception. | Total Due: | $114,534 |

Form(s) and Endorsement(s) that are made a part of this policy at time of issue:
- RHIC 7000 (ed. 12/16) Commercial Property Policy Declarations
- RHIC 1101 (01/16)  Signature Endorsement
- MPP 11 16 Coverage Form

Countersigned By              SEE ATTACHED SIGNATURE PAGE

Authorized Representative

THESE DECLARATIONS TOGETHER WITH THE COVERAGE PART COVERAGE FORM AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

RHIC 7000 (Ed. 12/16)        Includes Copyrighted Material of Insurance Services Office, Inc.        Page 1 of 1
with its permission

PROPERTY POLICY COVERAGE FORM

<u>Table of Contents</u>

GENERAL PROVISIONS.................................................................................................4
1.   Policy Term and Premium ..................................................................................4
2.   Territory ..............................................................................................................4
3.   Limits of Liability ................................................................................................4
4.   Deductibles .........................................................................................................4
5.   Loss or Damage Insured ....................................................................................5
6.   Loss or Damage Excluded .................................................................................5
7.   Coverage ............................................................................................................8
     A.  Real Property and Personal Property.........................................................8
     B.  Business Interruption .................................................................................8
     C.  Extra Expense ...........................................................................................9
     D.  Rental Value/Rental Income ......................................................................9
     E.  Soft Costs ................................................................................................10
     F.  Transit ......................................................................................................11
     G.  Accounts Receivable ...............................................................................11
     H.  Leasehold Interest / Leasehold Improvements & Betterments.................12
     I.   Acquisition Costs .....................................................................................13
     J.   Electronic Data Processing Systems and Electronic Data Processing Media ...13
     K.  Fine Arts ..................................................................................................14
     L.  Valuable Papers and Records ..................................................................15
     M.  Condominium Unit Owners Coverage ......................................................15
     N.  Tenants Relocation and Move-Back Expense...........................................15
     O.  Arson/Theft Reward .................................................................................15
     P.  Lock and Key Replacement ......................................................................15
8.   Extensions of Coverage ...................................................................................16
9.   Property Excluded .............................................................................................18
10.  Valuation ..........................................................................................................18
11.  Building Ordinance, Demolition and Increased Cost of Construction ...............19
12.  Limited Coverage for Mold or Fungi, Bacteria, or Wet or Dry Rot....................20
13.  Fire Brigade Charges/ Fire Extinguishing Materials and Expenses ..................21
14.  Debris Removal .................................................................................................21
15.  Decontamination and Clean Up Expense .........................................................21
16.  Notice of Loss ...................................................................................................21
17.  Non-Reduction of Limits of Liability ..................................................................22
18.  Subrogation and Subrogation Waiver ...............................................................22
19.  Protection and Preservation of Property ...........................................................22
20.  Vacant Buildings/Units......................................................................................22
21.  Appraisal...........................................................................................................23
22.  Salvage and Recoveries...................................................................................23
23.  Expediting Expense...........................................................................................23
24.  Law and Jurisdiction .........................................................................................23
25.  Contributing Insurance ......................................................................................23
26.  Excess Insurance ..............................................................................................23
27.  Underlying Insurance ........................................................................................24
28.  Other Insurance ................................................................................................24
29.  Coinsurance Waiver ..........................................................................................24
30.  Errors & Omissions ...........................................................................................24
31.  Titles of Paragraphs .........................................................................................24
32.  Certificates of Insurance ...................................................................................24
33.  Partial Payment of Loss.....................................................................................25
34.  Mortgage Clause ...............................................................................................25
35.  Cancellation ......................................................................................................25
36.  Inspection and Audit .........................................................................................25
37.  Loss Adjustment Expenses ...............................................................................26
38.  Loss Adjusters ..................................................................................................26
39.  Loss Payable ....................................................................................................26
40.  Definitions .........................................................................................................26
     A.  Actual Cash Value ...................................................................................27
     B.  Architect Fees and Engineering Fees ......................................................27
     C.  Bacteria ....................................................................................................27

    D.  Back up of Sewers, Drains and Sump Systems ..............................................27
    E.  Contaminants or Pollutants ...........................................................................27
    F.  Earth Movement ..........................................................................................27
    G.  Electronic Data Processing Systems ...........................................................28
    H.  Electronic Data Processing Media ...............................................................28
    I.  Fine Arts .....................................................................................................28
    J.  Fire Brigade Charges/Fire Extinguishing Materials and Expenses ..............28
    K.  Flood ...........................................................................................................28
    L.  Fraudulent or Dishonest Act(s) ...................................................................28
    M.  Land Improvements .....................................................................................28
    N.  Interest of the Insured as Lessee ................................................................29
    O.  Miscellaneous Unnamed locations ..............................................................29
    P.  Mold or Fungi ..............................................................................................29
    Q.  Named Storm ..............................................................................................29
    R.  Net Lease Interest ......................................................................................29
    S.  Occurrence ..................................................................................................29
    T.  Ordinary Payroll ..........................................................................................29
    U.  Personal Property ........................................................................................29
    V.  Real Property ..............................................................................................29
    W.  Sinkhole ......................................................................................................30
    X.  Soft Costs ...................................................................................................30
    Y.  Transit .........................................................................................................30
    Z.  Underlying Policy .........................................................................................30
    AA.  Vacant ......................................................................................................30
    BB.  Valuable Papers and Records ..................................................................31
41.  Priority of Payments .............................................................................................31
42.  Breach of Warranty or Condition ..........................................................................31
43.  Conflicting Provisions ...........................................................................................31
44.  Concealment, Misrepresentation or Fraud ............................................................31
45.  Duties of the Named Insured in the Event of Loss or Damage ...............................31
46.  Conformity to Statute ...........................................................................................32
Endorsement No. 1 - Joint Loss Adjustment Agreement ...............................................33
Endorsement No. 2 - Wind Tier Counties .....................................................................34
Endorsement No. 3 – Mold or Fungi, Bacteria, or Wet or Dry Rot - Additional Conditions ...36
Endorsement No. 4 – U.S. Terrorism Risk Insurance Act of 2002 as Amended – Not Purchased Clause ...37
Endorsement No. 5 – Asbestos .....................................................................................38
Endorsement No. 6 - Application of Sublimits Endorsement ..........................................39
Endorsement No. 7 – Notice of Service Of Suit .............................................................40
Endorsement No. 8 – Short Rate Cancellation Endorsement ........................................41
Endorsement No. 9 – Hurricane Minimum Earned Premium Endorsement ....................43
Endorsement No. 10 – Wind Driven Precipitation Sublimit .............................................44
Endorsement No. 11 – Castastrophic Ground Cover Collapse .......................................45

## GENERAL PROVISIONS

Subject to the terms, conditions, limitations and exclusions hereinafter contained or added by endorsement(s), this Policy insures **Real Property** and **Personal Property** (including Improvements and Betterments) of the Named Insured, or property for which the Named Insured may be held legally liable, against All Risks of Direct Physical Loss or Damage Excluding **Flood** and **Earth Movement**, or as listed in the Declaration Page or Endorsements attached hereto, occurring during the policy period.

The limits, deductibles and coverages of this Policy apply unless the Proposal issued to an individual Named Insured restricts the limits, deductibles or coverages and then those more restrictive terms supersede this policy and shall apply to that Named Insured.

It is hereby noted and agreed by the Insurer that where the words "Company" or "The Company" appears in the contract language; this is deemed to read 'Insurer' to reference Insurance Companies.

**Named Insured:**   Per the Declaration Page of this policy

**Mailing Address:**   Per the Declaration Page of this policy

1. **Policy Term and Premium**

   In consideration of premium paid, this policy attaches and covers for the period as set forth in the Declaration page beginning and ending at 12:01 A.M., Standard Time, at the location as set forth in the Declarations page or as endorsed hereto.

2. **Territory**

   This policy covers within and between the fifty states comprising the United States of America, its territories, possessions, including the District of Columbia.

3. **Limits of Liability**

   The Company shall not be liable for more than the limit of liability set forth on the Declaration page, all subject to the following sublimits per attached Appendix A – Sublimits, or as may be sub-limited elsewhere in the policy or as otherwise endorsed hereafter.

4. **Deductibles**

   - Sublimits: Per APPENDIX B – Deductibles

   A. Each claim for loss, damage or expense arising out of any one **Occurrence**, and from the amount of such adjusted claim, there shall be deducted the minimum applicable deductible amounts specified in the Declaration Page, or as endorsed hereto.

   B. If two or more deductible amounts apply to a claim arising out of a single **Occurrence**, the total to be deducted shall not exceed the largest deductible that applies, with such larger deductible being applied to the entire loss, incurred by the insured.

5. **Loss or Damage Insured**

This policy insures against All Risks of Direct Physical Loss or Damage Excluding **Flood** and **Earth Movement**, or as listed in the Declaration Page or Endorsements attached hereto, occurring during the policy period as defined in the declaration pages.

6. **Loss or Damage Excluded**

This policy does not insure the following:

A. Loss or damage caused by hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending, or expected attack:

   (1) by any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces;
   (2) or by military, naval, or air forces;
   (3) or by an agent of such government, power, authority, or forces;

B. Any act of terrorism - an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear;

C. Loss or damage caused by any weapon employing atomic fission or fusion;

D. Loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto;

E. Loss or damaged caused by rebellion, revolution, civil war, usurped power; or action taken by governmental authority in hindering, combating, or defending against the foregoing;

F. Loss or damage caused by seizure or destruction by order of public authority, except destruction by order of public authority to prevent spread of, or to otherwise contain, control or minimize loss, damage, or destruction which occurs due to loss or damage insured under this policy;

G. Risks of contraband or illegal trade;

H. Loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, attributed to, or aggravated by loss or damage insured herein except:

   (1) The Insurer shall be liable for loss or damage caused by sudden or accidental radioactive contamination, including resultant radiation damage from material used or stored or from processes conducted on insured premises, provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

MPP 11 16 Coverage Form                                                      Page 5 of 44

(2) If fire ensues, liability is specifically assumed by the Insurer for such ensuing fire insured hereunder but not including any loss due to nuclear reaction, nuclear radiation or radioactive contamination;

**I.** Loss or damage caused by Fraudulent or Dishonest Act(s) committed by the Insured or any of the Insured's employees;

This exclusion does not apply to loss or damage resulting from the Insured voluntarily parting with title or possession of any property if induced to do so by any fraudulent scheme, trick, device or false pretense, nor shall this exclusion apply to willful acts of destruction committed by the Insured's employees;

**J.** Wear and tear, or gradual deterioration, unless physical loss or damage not excluded in this policy ensues, and then this policy shall insure only the ensuing loss or damage;

**K.** The cost of making good defective design, faulty material, or faulty workmanship, except, if physical loss or damage not excluded in this policy ensues, then this policy shall insure such ensuing loss or damage;

**L.** Except as provided in Clause 15 Decontamination and Clean Up Expense, loss or damage arising out of the dispersal, release or escape of **contaminants or pollutants** into or upon land, the atmosphere or any water course or body of water, but not excluding resultant physical loss or damage from **contaminants or pollutants** to insured property directly caused by or resulting from physical loss or damage insured by this Policy;

If physical loss or damage insured by this policy causes the dispersal, release or escape of **contaminants or pollutants** onto property insured by this policy, then such resultant physical loss or damage is insured hereunder;

**M.** Inherent vice or latent defect; all unless physical damage not excluded by this Policy results, in which event, this Policy will insure only such resulting damage;

**N.** Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will insure only such resulting damage;

**O.** Against electrical injury or disturbance to electrical appliances, devices or wiring caused by electrical currents artificially generated, or by electrical arcing, unless physical loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage;

**P.** Against mechanical breakdown, including rupture or bursting caused by centrifugal force, unless physical loss or damage from a peril insured against herein ensues and then this policy shall cover for such ensuing loss or damage;

**Q.** Against explosion, rupture, or bursting of steam boilers, steam pipes, steam turbines, or steam engines owned or operated by the insured unless physical loss or damage from a peril insured against ensues and then this policy shall cover for such ensuing loss or damage; it is agreed that direct loss resulting from the explosion of unconsumed fuel within the firebox or combustion chamber or any fired vessel or within the flues or passages which conduct the gases or combustion there from shall be covered hereunder;

**R.** Loss or Damage caused by nesting or infestation, or discharge or release or waste products or secretions by insects, birds, rodents or other animals;

**S.** This policy does not cover unless otherwise provided in Section 12:

    (1) Loss or damage caused directly or indirectly by **mold or fungi**, wet or dry rot, or **bacteria**;

    (2) The costs associated with the enforcement of any ordinance or law which requires the Named Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **mold or fungi**, wet or dry rot, or **bacteria**;

    (3) Any costs, expenses, fines or penalties incurred or sustained by or imposed on the Named Insured at the order of any government agency, court or other authority arising from any cause whatsoever;

This **mold or fungi**, wet or dry rot, or **bacteria** exclusion applies whether or not the loss event results in widespread damage or affects a substantial area;

**T.** Loss or Damage from **Earth Movement;**

**U.** Loss or Damage from **Flood.**

7. **Coverage**

This policy insures the interest of the Insured in the following:

A. **Real Property and Personal Property**

Coverage is hereby provided for **Real Property** and **Personal Property:**

The interest of the Insured in the **Real Property** and **Personal Property** for which they are legally responsible for, including the property of others in the Insured's care, custody, or control and the Insured's liability imposed by law or assumed by written contract, for any such property, including but not limited to the following:

1. Improvements and Betterments. The Insurer agrees to accept and consider the Insured as sole and unconditional owner of the Improvements and Betterments, notwithstanding any contract or lease to the contrary.

2. At the option of the Insured, **Personal Property** of the Insured's officials and employees, while in the Insured's care, custody or control, or while on the Insured's premises.

3. Contractor's and/or subcontractor's and vendor's interests in property insured to the extent of the Insured's liability imposed by law or assumed by written contract. As respects this coverage this Policy will not be extended to insure the Time Element coverages as respects the interest of contractors and/or subcontractors.

4. Property while in the incidental course of construction and/or during erection, renovation, assembly and/or installation. Coverage hereunder is not provided for new construction projects.

5. **Architect Fees and Engineering Fees.**

B. **Business Interruption**

1. Loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as described in Clause 7A.

2. If such loss occurs during the term of this policy, it shall be adjusted on the basis of the ACTUAL LOSS SUSTAINED by the Insured during the period of recovery consisting of the net profit which is thereby prevented from being earned and of all charges and expenses, including ordinary payroll, only to the extent that these must necessarily continue during the interruption of business and only to the extent to which such charges and expenses would have been earned had no loss occurred.

3. In the event of physical loss, damage, or destruction to property described in Clause 7A. caused by any of the perils covered herein which results in an interruption of research and development activities which in themselves would not have produced income during the indemnity period of recovery, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including payroll, directly attributable to such research and development activities.

4. However, this Insurer shall not be liable for any loss resulting from damage to or destruction of finished stock, nor for the time required to reproduce said finished stock. Finished stock shall mean stock manufactured or held by the Insured which

in the ordinary course of the Insured's business is ready for packing, shipment, or sale.

5. Resumption of Operations: It is a condition of this insurance that if the Insured could reduce the loss resulting from the interruption of business;

   a. by a complete or partial resumption of operation of the property insured, whether damaged or not; or

   b. by making use of available stock, merchandise, or other property, such reduction shall be taken into account in arriving at the amount of loss hereunder.

6. Experience of the Business:

   a. In determining the amount of net profit, charges, and expenses covered hereunder for the purposes of ascertaining the amount of loss sustained, due consideration shall be given to the experience of the business before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

   b. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available experience of the business after completion of the construction, erection, installation, or assembly.

**C. Extra Expense**

Coverage is hereby provided for **Extra Expense** incurred resulting from physical loss or damage to property insured by this Policy by any of the perils covered herein during the term of this policy.

**Extra Expense**, wherever used in this Policy, is defined as the excess (if any) of the total cost(s) incurred during the period of restoration, chargeable to the operation of the Insured's business, over and above the total cost(s) that would have normally have been incurred to conduct the business during the same period had no loss or damage occurred.

In the event of loss, damage, or destruction to property as covered herein caused by any of the perils covered herein which results in an interruption of research and development activities, this policy shall cover the actual loss sustained of the extra expenses as defined herein directly attributable to the interruption of such research and development activities.

**D. Rental Value/Rental Income**

Coverage is hereby provided for Rental Value / Rental Income:

1) Rental value loss sustained by the Insured resulting directly from the necessary untenantability caused by physical loss, damage, or destruction by any of the perils covered herein during the term of this policy to real or **Personal Property** as described in Clause 7A. but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability.

2) If the Insured is the lessor, for the purposes of this insurance, "rental value" is defined as the sum of:
   a) the total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured, and
   b) the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and
   c) the fair rental value of any portion of said property which is occupied by the Insured.

3) If the Insured is the lessee, rental value shall be the determined rental which the Insured is obligated to pay (including ground rents, accrued charges, real estate taxes and interest if the Insured shall be liable therefore) less such charges and expenses as do not necessarily continue.

4) Experience of the Business

   a. In determining the amount of rental value covered hereunder for the purpose of ascertaining the amount of loss sustained, due consideration shall be given to the rental experience before the date of damage or destruction and to the probable experience thereafter had no loss occurred.

   b. With respect to alterations, additions, and property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the available rental experience of the business after completion of the construction, erection, installation or assembly.

5) Increased Tax Liability for Rental Income

   This policy is extended to cover increased tax liability incurred by the Named Insured as a direct result of direct physical loss or damage insured by this policy to property not excluded by this policy on the covered loss of rental income portion of a loss recovery, if the tax liability is greater than the amount that would have been incurred had no loss occurred. This policy will cover only the increased tax liability for the profit portion of the rental income loss.

E. **Soft Costs**

This policy shall cover **Soft Costs**, as hereinafter defined, incurred by the Insured caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to property under construction as covered herein.

(1) This Insurer shall pay **Soft Costs** incurred from the date that the building, structure or improvement would have been completed had no physical damage occurred until such time that it is completed. As soon as practicable after any loss, the Insured shall utilize every available means to reduce the amount of loss including:

   a. Partial or complete resumption of construction, business or operations;

   b. making use of materials, equipment, supplies, or other property at the Insured's premises or elsewhere; or

   c. making use of substitute facilities or services where practical; such reduction will be taken into account in arriving at the amount of such loss.

## F.  Transit

Coverage is hereby provided for **Transit**:

(1) Property in **Transit**, and this policy attaches and covers shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

(2) This insurance is extended to cover loss or damage to property:

    a.  sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery;

    b.  arising out of any unauthorized person(s) representing themselves to be the proper party(ies) to receive goods for shipment or to accept goods for delivery;

    c.  occasioned by the acceptance by the Insured, by its agents, or by its customers of fraudulent bills of lading, shipping and delivery orders, or similar documents;

    d.  at the Insured's option, which is incoming to the Insured.

(3) The Insured is not to be prejudiced by any agreements exempting lightermen from liability.

(4) Seaworthiness of any vessel or watercraft, and airworthiness of any aircraft are admitted between this Insurer and the Insured.

## G.  Accounts Receivable

Coverage is hereby provided for Accounts Receivables, and shall include:

(1)  All sums due the Insured from customers, provided the Insured is unable to effect collection thereof as the direct result of physical loss of or damage by any of the perils covered herein during the term of this policy to records of accounts receivable;

(2)  Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

(3)  Collection expense in excess of normal collection cost and made necessary because of such loss or damage;

(4)  Other expenses, when reasonably incurred by the Insured in reestablishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge media shall be deemed to represent sums due the Insured from customers, until such charge media is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss such amount shall be computed as follows:

   a.   the monthly average of accounts receivable during the last available twelve months shall be adjusted in accordance with the percentage increase or decrease in the twelve months average of monthly gross revenues which may have occurred in the interim.

   b.   the monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred, due consideration also being given to the normal fluctuations in the amount of accounts receivable within the fiscal month involved.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured.

**H.   Leasehold Interest / Leasehold Improvements & Betterments**

Coverage is hereby provided for Leasehold Interest / Leasehold Improvements & Betterments, and shall include Pro rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

(1)   the amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease for the unexpired term of the lease;

(2)   Improvements and Betterments to **Real Property** during the unexpired term of the lease which is not covered under any other section of this policy; including but not limited to the value any damaged or undamaged tenant's Improvements and Betterments when the Insured's Lease is cancelled by the Lessor or a tenant's Lease is cancelled by the tenant, acting under a valid condition of the Lease due to direct physical loss or damage to building or **Personal Property** caused by or resulting from a covered peril at an insured location. No sublimit of liability applies to this additional coverage, but in no event will the Company be liable for an amount in excess of the applicable sublimit of liability specified for the leasehold interest, if any. In addition, if insured property is (1) damaged by a covered peril during the policy period and (2) the Insured's lease is canceled by a party, other than the Insured or an entity with any common ownership of the named insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed insured property is located, then this policy is extended to cover the additional costs of tenants Improvements and Betterments installed following such loss, not to exceed $1,000,000 per policy year.

(3)   the amount of advance rental paid by the Insured and not recoverable under the terms of the lease for the unexpired term of the lease;

when property is rendered wholly or partially untenantable as a direct result of physical loss or damage by any of the perils covered herein during the term of this policy and the lease is cancelled by the lessor in accordance with the

conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located; and

a.   **Interest of the Insured as Lessee** when property is rendered wholly or partially untenantable by any of the perils covered herein during the term of this policy and the lease is cancelled by the lessor in accordance with the conditions of the lease or by statutory requirements of the state in which the damaged or destroyed property is located.

b.   The **Interest of the Insured as Lessee** as referred to herein shall be paid for the first three months succeeding the date of the loss and the **Net Lease Interest** shall be paid for the remaining months of the unexpired lease.

This Insurer shall not be liable for any increase of loss, which may be occasioned by the suspension, lapse or cancellation of any license or by the Insured exercising an option to cancel the lease.

I.   **Acquisition Costs**

Coverage is hereby provided, and the Insured will be reimbursed up to $100,000 per occurrence in the event of a covered loss hereunder and with proof of such expense for the soil tests, structural studies, marketing studies, architectural work, financing costs including but not limited to loan commission fees and interest expenses, and any other costs associated with the intended acquisition of a property or properties in case of a loss to the property(ies) which causes termination of the acquisition of the property(ies).

J.   **Electronic Data Processing Systems and Electronic Data Processing Media**

Coverage is hereby provided, and the following terms and conditions shall apply to electronic data processing coverage in addition to those terms and conditions elsewhere in this policy form. In the event any of the following is in conflict with terms and conditions elsewhere in this policy form, the following terms will supersede any other:

(1) The following is covered as part of Business **Personal Property**: **Electronic Data Processing Systems** and **Electronic Data Processing Media** including the information recorded therein for direct loss or damage and for any resultant Extra Expense.

(2) The following exclusions supersede and replace any others mentioned in this policy form. This policy does not insure:

a.   Loss or damage caused by error in machine programming;

b.   Loss or damage caused by or arising out of infidelity by an employee of the Named Insured. A willful act of malicious intent or damage caused by unauthorized entry, shall be deemed not to be an act of infidelity and shall be covered under this policy;

c.   Loss by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by the perils insured against in this policy; however, subject to the foregoing and all provisions of this policy, direct

MPP 11 16 Coverage Form                                                          Page **13** of **44**

loss by fire resulting from nuclear reaction or nuclear radiation or radioactive contamination is insured against by this policy;

d.   Loss or damage caused by (1) hostile or warlike action in time of peace or war, including action in hindering, combating, or defending against an actual, impending or expected attack, (a) by a government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces; or (b) by military, naval or air forces; or (c) by an agent or any such government; power authority or forces; (2) any weapon of war employing atomic fission, atomic fusion, radioactive force or forces; (3) insurrection, rebellion, revolution, civil war, usurped power, or action taken by any governmental authority in hindering, combating or defending against such an occurrence, seizure or destruction under guaranties or customs regulations, confiscation by order of any government or public authority, or risks of contraband or illegal transportation or trade.

(3) How loss is settled:

a.   **Electronic Data Processing Systems** and **Electronic Data Processing Media** and information therein

The measure of recovery shall be the cost of replacement or reproduction with other of like kind and quality; if not replaced or reproduced the Company will pay the blank value of the media.

b.   **Extra Expense**

Coverage is hereby provided for the necessary extra expense incurred by the Named Insured in order to continue as nearly as practical the normal conduct of the Named Insured's Data Processing operation following loss or damage to property covered under this section of the policy by a peril not otherwise excluded, whether or not such **Extra Expense** reduces the amount of loss that would have otherwise been payable under the business interruption section of this policy. However, no payment shall be made under this section if the same is otherwise collectible under the business interruption section.

K.  **Fine Arts**

Coverage is hereby provided as part of Business **Personal Property** for **Fine Arts** which are either the **Fine Arts** of the Named Insured or the **Fine Arts** of others in custody of the Named Insured while at the locations designated elsewhere in this policy (if any) or anywhere else within the territorial definition of this policy temporarily, and while on exhibition.

In the event of the total loss of any article or articles which are a part of a set, the Company agrees to pay the Named Insured the full amount of the value of such set, as specified in the Declaration Page, and the Named Insured agrees to surrender the remaining parts of the set to the Company.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits section of this policy.

L. **Valuable Papers and Records**

This policy covers **Valuable Papers and Records**. The following terms and conditions shall apply, as well as those terms and conditions elsewhere in this policy form: **Valuable Papers and Records** are defined as written, printed, or otherwise inscribed documents and records, including, but not limited to; books, maps, films, drawings, abstracts, deeds, mortgages, micro-inscribed documents, manuscripts and media but not including money and/or securities. This extension does not apply to **Valuable Papers and Records** which exist as electronic data.

The limit of liability will not exceed the applicable limit of insurance shown in the sublimits section of this policy.

M. **Condominium Unit Owners Coverage**

Building coverage is extended to include the following property contained within the condominium unit which is owned by the Named Insured or unit owner:

(1) Appliances, refrigerators, air conditioners, cooking ranges, dishwashers and clothes dryers comprising a part of the building, contained within the unit.

(2) Fixtures, installations or permanent additions, comprising a part of the building owned by the unit owner located inside individual unit installed in accordance with the original plans and specifications or replacements of like kind or quality as those initially installed.

However this extension shall never be broader in coverage than what is required by the most recent CC&R's in effect, or the applicable state requirements in affect, at the time of loss and only for the minimum amounts of responsibility insured there at the location effected by the covered peril. Any Improvements or Betterments made, or caused to be made, by an individual unit owner are excluded.

N. **Tenants Relocation and Move-Back Expense**

This policy covers moving costs incurred by the insured with respect to relocating and moving tenants who temporarily vacate a covered building due to loss or damage from a peril insured against, including when statutorily required. Covered moving costs include packing, insuring and transporting tenants' property, reestablishing utility services (less refunds for discontinued service), assembling and setting up tenants' fixtures and equipment, unpacking and re-shelving tenants' stock and supplies, and costs of rent abatement offered to the tenant(s) as an incentive to reoccupy the premises.

O. **Arson/Theft Reward**

This policy is extended to cover payment of any reward offered on the insured's behalf for information that leads to conviction of the perpetuator(s) of arson (fire) and/or theft to insured property that sustains physical loss or damage insured by this policy. Payment of any reward will not increase per **occurrence** regardless of the number of informants providing information that leads to a conviction.

P. **Lock and Key Replacement**

The Insurer will pay the cost for rekeying, repair or replacement, whichever is less, of exterior and interior door locks located at a covered location if the Insured's door

keys are stolen in a covered "theft" loss. For the purposes of the coverage "theft" losses also include those acts of "theft" committed by "employees".

**8. Extensions of Coverage**

    A.  This clause extends the coverages described in clauses 7.B, 7.C, and 7.D.

        This policy insures actual loss sustained resulting from or caused by physical loss or damage of the type insured herein to the following:

        (1)  Service Interruption/Off Premises Power: Any service provider's property including electrical equipment and systems, fuel, water, gas, feedstock, pulp, liquid gases, sewage, steam, telephone, fiber optic cable, telecommunications, heating, refrigeration and/or air conditioning systems, or their respective transmission and distribution lines (however, coverage for loss or damage resulting from damage to transmission and distribution lines is limited to transmission and distribution lines within two (2) statute miles of an insured location) or utility plants which directly or indirectly provide incoming or outgoing services to the Insured situated on or outside of the Insured's premises.

        (2)  Interruption by Civil or Military Authority: This policy is extended to insure actual loss sustained during the period of thirty (30) consecutive days when, as a result of physical loss or damage by a peril not excluded by this Policy, access to property of the Insured is impaired by order or action of civil or military authority. This coverage is subject to a two (2) mile radius limitation.

        (3)  Ingress/Egress: This policy is extended to insure actual loss sustained during the period of sixty (60) consecutive days when, as a result of physical loss or damage by a peril not excluded by this Policy, ingress to or egress from real or **Personal Property** of the Insured is impaired. This coverage is subject to a two (2) mile radius limitation.

        (4)  Realty Tax – Increased Assessment

            The additional amount of the realty tax assessment attributable to the construction, repair, rebuilding or reconstruction following loss or damage from an insured peril to covered **Real Property**. The insurer will pay for such increased realty tax assessment if it is assessed up to one year following the end of the period of indemnity.

        (5)  Additional Required Property Management Fees

            Property management fees required by contract due to non-routine maintenance or repairs following a covered loss.

        (6)  Leasing Commissions

            This policy covers leasing commission insofar as they are unearned at the time of loss. In addition, in the event leasing commissions are due and payable upon re-leasing of the property, the Insured will be entitled to the difference between re-leasing commission paid, minus the leasing commission previously paid for the period when the property is re-leased, until the original lease would have expired.

B.  Loss Provisions Applicable to Clauses 7.B, 7.C, 7.D.

(1) Period of Recovery

The length of time for which loss may be claimed is referred to as the period of recovery and:

a.  shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

b.  shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged; and

c.  such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

i.  the date on which the liability of the Insurer for loss or damage would otherwise terminate; or

ii.  the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations

but in no event for more than one hundred and eighty (180) consecutive days thereafter from said later commencement date;

d.  with respect to alterations, additions, or property while in the course of construction, erection, installation, or assembly, due consideration shall be given to the level of production or level of business operations that would reasonably have been achieved after construction and startup would have been completed had no loss or damage occurred.

(2) If the Insured can reduce the loss resulting from the interruption of business:

a.  by a complete or partial resumption of operations of the property insured,

b.  by making use of other property insured herein;

Such reduction shall be taken into account in arriving at the amount of loss hereunder.

(3) Expense to Reduce Loss:

This policy also insures such expenses as are necessarily incurred for the purpose of reducing any loss under this policy; however such expenses may not exceed the amount by which the loss under this policy is thereby reduced.

(4) Experience of the Business:

In determining the amount of loss insured hereunder due consideration shall be given to the experience of the business before the date of loss or damage and to the probable experience thereafter had no loss or damage occurred.

**9. Property Excluded**

This policy does not insure loss or damage to:

A.  Spacecraft, satellites, including launch vehicles/launch sites, aircraft and motor vehicles licensed for highway use when not on the Insured's premises, except this exclusion shall not apply to motor vehicles licensed for highway use that is contractors' equipment while located on the Insureds construction site.

B.  Land, except as insured under Clause 15. Decontamination and Clean Up Expense. This exclusion shall not apply to the cost of reclaiming, restoring or repairing **Land Improvements**.

C.  Currency, money, gold bullion, evidence of debt, except accounts receivable as defined in the policy, notes or securities except as otherwise defined in this policy.

D.  Growing crops, standing timber (excluding trees used in landscaping), and live or deceased animals.

E.  Water, except as insured under Clause 15. Decontamination and Clean Up Expense, or when contained in any form of piping system, processing system or holding tank or used in the manufacturing process.

F.  Export and import shipments after loading on board the ocean-going watercraft and during ocean **Transit**, but coverage will attach after unloading at the destination port.

G.  Offshore property, including seawalls, piers, docks, wharves, and any structures and their contents extending from land or shore and the floating docks permanently moored to docks, banks or shore.

H.  Underground mines and caverns including the property contained conduits, drains or flues.

**10. Valuation**

At time of loss, the basis of adjustment shall be as follows:

A.  On buildings and structures, at the replacement cost new with materials of like kind and quality; if not replaced, then at the **actual cash value**.

B.  On machinery, equipment, furniture, fixtures and Improvements and Betterments at the replacement cost new; if not replaced, then at the **actual cash value**.

C.  **Valuable Papers and Records** and **Electronic Data Processing Media** at the value blank plus the cost of labor, service and/or supplies for actually reconstructing, researching, gathering information, reproducing, recreating, transcribing or copying such papers, records and **Electronic Data Processing Media**.

D.  **Fine Arts** owned by the Insured at the cost of reasonably restoring the property to its condition immediately prior to the loss, or in the event that the property cannot be restored at the appraised value prior to the loss. In absence of such appraisal, at the market value at the time of loss, plus the Insured's costs.

**Fine Arts,** which is the property of others, at the Insured's option, either at the cost of reasonably restoring the property to its condition immediately prior to loss, or the Insured's contractual or legal liability.

E. Property of others and property leased by the Insured, or for which the Insured has agreed to insure, at the lesser of:

   (1) the replacement cost new, or;

   (2) the amount stipulated in the lease agreement, or;

   (3) Insured's contractual or legal liability.

F. All other property, not otherwise mentioned above, at the replacement cost new; if not replaced, then at the **actual cash value**.

It is understood and agreed that as respects replacement cost new, the Insured shall have the option of replacing equipment having technological advantages and/or representing an improvement in function and/or forming part of a program of system enhancement in the event of obsolescence provided that such replacement can be accomplished without increasing the Insurer's liability.

As respects 10.A., 10.B. and 10.F., the Insured may elect not to replace the **Real Property** and/or **Personal Property** lost, damaged, or destroyed and obtain loss settlement on a replacement cost basis if the proceeds of such loss settlement are expended in other capital expenditures related to the Insured's operations.

Permission is granted for the Insured to replace the property with similar property at the same or another site within the territorial limits of the policy, but recovery is limited to what it would cost to replace on the same site with the same dimensions and occupancy as appears on the most recent statement of values on file with the company.

**11. Building Ordinance, Demolition and Increased Cost of Construction**

In the event of physical loss or damage insured under this policy that causes the enforcement of any law or ordinance in force at the time of damage regulating the construction, repair or use of the property, the Insurer shall be liable for:

Coverage A.  The proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

Coverage B.  The cost of demolishing the undamaged property including the cost of clearing the site;

Coverage C.  The increased cost of repair or reconstruction of the damaged and undamaged property on the same site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction or use of the damaged property on the same site. However, the Insurer shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

Coverage D.  The increase in loss, in respect of, Business Interruption, Extra Expense, Rental Value, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance;

It is understood and agreed that in the event **Real Property** or **Personal Property** is not repaired or replaced to the same height, floor area, size, style or comparable quality of the original property insured due to the enforcement of law or ordinance regulating, restricting or prohibiting repair or replacement of covered property, this policy will pay the full replacement cost without deduction for depreciation for the **Real Property** or **Personal Property** damaged or destroyed, up to the Limit of Liability contained within this policy, as if the property was replaced to the same height, floor area, size, style or comparable quality of the original property specifications insured.

This policy will also pay rental income loss as if the original structure were repaired or replaced to original specifications, including number of units and/or square footage, for a period not to exceed 12 months subject to the terms and conditions of this policy.

### 12. Limited Coverage for Mold or Fungi, Bacteria, or Wet or Dry Rot

This policy is extended to cover, subject to a maximum limit as listed in the policy declarations per **occurrence** per insured location, **loss or damage** directly caused by or resulting from **mold or fungi, bacteria,** or wet or dry rot; if such **mold or fungi, bacteria,** or wet or dry rot is directly caused by or results from one or more of the following causes that occurs during the policy period:

- Aircraft;
- Civil disturbance;
- Explosion;
- Fire;
- Hail;
- Leakage from fire extinguishing equipment;
- Lightning;
- Riot;
- Smoke;
- Sprinkler Leakage;
- Vehicles;
- Weight of snow, ice or sleet;
- Windstorm;
- Water Damage except as otherwise excluded in this Policy.

The maximum aggregate limit provided by this coverage extension shall be as shown in the sublimits of the policy per **occurrence and** in the aggregate, regardless of the number or type of coverages that may apply, the number of locations to which this coverage extension applies, or regardless of the number or type of **mold or fungi, bacteria,** or wet or dry rot that caused the **loss or damage**. This amount is not in addition to the limits of coverage for **real property** or **personal property** or time element coverage as specified elsewhere in this policy and is inclusive of all testing, analysis, remediation and reconstruction.

Definitions applicable to this section:

**Loss or damage** means:

Direct physical loss or damages to covered property by **mold or fungi,** wet or dry rot or **bacteria,** including the cost of removal of the mold, fungus, wet or dry rot or **bacteria;**

The cost to tear out and replace any part of the building or other property as needed to gain access to the mold, fungi, wet or dry rot or **bacteria;** and

The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is reason to believe that mold, fungi, wet or dry rot or **bacteria** are present.

Coverage will not be provided for continuous or repeated seepage or leakage of water, or the presence of condensation or humidity, moisture or vapor, that occurs over a period of 14 days or more.

### 13. Fire Brigade Charges/ Fire Extinguishing Materials and Expenses

This policy insures the following expenses resulting from loss or damage insured herein:

    A.  fire brigade charges and other extinguishing expenses for which the Insured may be assessed;

    B.  loss of fire extinguishing materials expended, including recharge and / or refill of fire extinguishers and fire extinguishing systems.

However, there will be no coverage for charges incurred for false alarm.

### 14. Debris Removal

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location that remains as a direct result of physical loss or damage insured by this Policy.

This Additional Coverage does not cover the costs of removal of:

    A.  contaminated insured property; or

    B.  the contaminant in or on insured property,

whether or not the contamination results from insured physical loss or damage. Contamination includes, but is not limited to, the presence of **contaminants or pollutants** or hazardous material.

### 15. Decontamination and Clean Up Expense

If insured property is contaminated as a direct result of physical damage insured by this Policy and there is in force at the time of the loss any law or ordinance regulating contamination, including but not limited to the presence of **contaminants or pollutants** or hazardous material, then this Policy covers, as a direct result of enforcement of such law or ordinance, the increased cost of decontamination and/or removal of such contaminated insured property in a manner to satisfy such law or ordinance. This Additional Coverage applies only to that part of insured property so contaminated as a direct result of insured physical damage.

Insurers are not liable for the costs required for removing contaminated uninsured property or the contaminant therein or thereon, whether or not the contamination results from an insured event.

### 16. Notice of Loss

The Insured shall report to the Insurer any loss or damage which may become a claim under this insurance policy as soon as may be practicable after it becomes known to the Insured.

### 17. Non-Reduction of Limits of Liability

Any loss hereunder shall not reduce the limit(s) of liability under this policy except for aggregate limits as described in Clause 3, the Declarations page, elsewhere in the policy, or as otherwise endorsed hereafter.

### 18. Subrogation and Subrogation Waiver

A. It is agreed that upon payment of any loss, this Insurer is subrogated to all the rights of the Insured to the extent of such payment.

B. The right of subrogation against the Insured's subsidiary, affiliated, or associated corporations or companies, joint ventures, partnerships or individuals, or any other party required to be insured, or any other corporations or companies associated with the Insured through ownership or management is waived, and at the option of the Insured, subrogation is waived against any tenant or landlord of the Insured.

C. In the event of any payment under this policy, except where subrogation rights have been waived, the Insurer shall be subrogated to the extent of such payment to all the Insured's rights of recovery therefore. The Insured shall execute all papers required and shall take reasonable and necessary action to secure such subrogation rights. The Insurer will act in concert with all other interests concerned, i.e., the Insured and any other company (ies) participating in the payment of any loss as primary or excess insurers, in the exercise of such rights of recovery. If any amount is recovered, after deducting the costs or recovery, such amount shall be divided between the interests concerned in the proportion of their respective interests.

### 19. Protection and Preservation of Property

This Policy covers reasonable and necessary costs incurred for actions to temporarily protect or preserve insured property, provided such actions are necessary due to actual, or to prevent immediately impending, insured physical loss or damage to such insured property.

This Additional Coverage is subject to the deductible provisions that would have applied had the physical loss or damage occurred.

### 20. Vacant Buildings/Units

If the building, or individual non-habitational unit, where the loss occurs has been **vacant** for more than 90 consecutive days before the loss or damage occurs, the Insurer(s) will not pay for loss or damage caused by any of the following:

A. Glass Breakage to the Building;
B. Water Damage, from any cause;
C. Vandalism;
D. Theft or Attempted Theft.

Individual buildings that are part of a location that are in the course of incidental construction/renovation are not considered to be **vacant**, however a location that has less than 50% occupancy, even if under construction or renovation, is considered to be **vacant**.

It is further warranted that each individual structure at an Insured location must be at least 50% occupied. Structures that contain less than 50% occupancy must be protected and secured from unauthorized access. Failure to comply with this could render all insurance under this policy null and void.

## 21. Appraisal

In case the Insured and this Insurer shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Thirty (30) days of such demand. The appraisers shall select a competent and disinterested umpire; and, failing for Fifteen (15) days to agree upon such umpire, then on request of the Insured or the Insurer, such umpire shall be selected by a judge of a district court of a judicial district in accordance with the Law and Jurisdiction clause of this policy. The appraisers shall then appraise the loss, separating the loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized of any two when filed with the Insurer, shall determine the amount of loss. Each appraiser shall be paid by the party selecting each respective appraiser and the expenses of appraisal and umpire shall be paid by the parties equally.

If there is an appraisal, the Company will still retain its right to deny the claim.

## 22. Salvage and Recoveries

After expenses incurred in salvage or recovery are deducted, any salvage or other recovery, except recovery through subrogation proceedings and/or from underlying and/or excess insurance as described herein, shall accrue entirely to the benefit of this Insurer until the sum paid by the Insurer has been recovered.

## 23. Expediting Expense

This policy insures the reasonable extra cost of temporary repair or replacement and of expediting the repair or replacement of damaged property insured hereunder, including overtime and express freight or other rapid means of transportation.

## 24. Law and Jurisdiction

In the event of any dispute arising between the Named Insured and Insurer concerning this policy, the State of Jurisdiction shall be the State in which the premises suffering the loss is located in.

## 25. Contributing Insurance

Permission is granted for other policies written upon the same terms, conditions, and provisions irrespective of limit or attachment point as those contained in this policy. This policy shall contribute to the total of each loss otherwise payable herein to the extent of the participation of this policy in the total limit of liability stated herein.

## 26. Excess Insurance

Permission is granted for the Insured to have excess insurance over the limit of liability in this policy without prejudice to this policy and the existence of such insurance, if any, shall not reduce any liability under this policy.

**27. Underlying Insurance**

Permission is granted for the Insured to purchase additional insurances, including on all or any part of the deductible, and against all or any of the coverage provided by this policy. The existence of such additional insurance shall not prejudice or affect any recovery otherwise payable under this policy. Recoveries under such additional insurance will inure to the benefit of the insurers hereon.

**28. Other Insurance**

Except as referred to in Clause 26 Contributing Insurance, Clause 27 Excess Insurance and Clause 28 Underlying Insurance, this policy shall not insure to the extent of any other insurance, whether prior or subsequent hereto in date and whether directly or indirectly insuring the same property against the same loss or damage. This insurance shall be excess of and/or supplementary to the amount recoverable from such other collectible insurance.

**29. Coinsurance Waiver**

This policy is not subject to Coinsurance.

**30. Errors & Omissions**

No inadvertent error, inadvertent omission or inadvertent failure in making reports or other data hereunder shall prejudice the Insured's right of recovery, but shall be corrected when discovered. It is further understood and agreed that any error in description of locations, or values of projects insured or to be insured by this policy shall not invalidate or reduce the policy limit of liability, or otherwise prejudice any recovery under this policy.

**31. Titles of Paragraphs**

The several titles of the various paragraphs of this policy (and of Endorsements and Supplemental Policies, if any, which are attached to this policy) are inserted solely for convenience or reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

**32. Certificates of Insurance**

All parties to whom a Certificate of Insurance has been issued, or are listed on the Declaration Page, are automatically added to this policy upon issuance of said certificates, either as Additional Insureds, Mortgagees or as Loss Payees, or any combination thereof, in accordance with the terms and conditions of this policy unless otherwise agreed to by the Insurer. Permission is granted for Named Insured and it's designates to issue Certificates on the Insurer's behalf. However, the Named Insured and/or it's designates are expressly restricted from using any Certificate of Insurance which adds additional liability or changes the terms and conditions of this contract without the written consent of insurers.

The Insurer agrees to waive the issuance of formal Insurer endorsements in respect of such interests.

**33. Partial Payment of Loss**

It is understood and agreed that Insurer, in the event of a loss covered by this policy, may allow a partial payment(s) of claim subject to the policy provisions and the normal adjustment process.

**34. Mortgage Clause**

Loss or damage, if any, under this policy shall be payable to the mortgagee(s) (or trustee(s)) as interest(s) may appear, and this insurance, as to the interest(s) of the mortgagee(s) (or trustee(s)) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. Provided also, that the mortgagor (or trustee) shall notify this Insurer of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of use thereof; otherwise, this policy shall be null and void.

This Insurer reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for Thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease and this Insurer shall have the right, on like notice, to cancel this agreement.

Wherever this Insurer shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that as the mortgagor or owner, no liability therefore existed, this Insurer shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made.

**35. Cancellation**

A.  This policy may be cancelled at any time at the request of the Insured or it may be cancelled by the Insurer by mailing to the Insured at the address as specified on the Declarations Page, written notice stating when, not less than 90 days thereafter, such cancellation shall be effective.

B.  The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Insurer shall be equivalent to mailing.

**36. Inspection and Audit**

This Insurer shall be permitted, but not obligated, to inspect the Insured's property at any reasonable time. Neither the Insurer's right to make inspections, nor the making thereof, nor any report thereon, shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe.

**37. Loss Adjustment Expenses**

This Policy covers the actual, reasonable, and necessary loss adjustment costs incurred by the Insured at the request of the Company for the purpose of determining the extent or amount of any loss or damage under this Policy for which the Company has accepted liability, subject to a claim for covered physical loss or damage to Covered Property having first been submitted to and accepted by the Company, and subject to the Insured having first obtained the approval of the Company prior to entering into any agreement with a vendor or incurring any loss adjustment costs. Costs covered by this coverage part are subject to the deductible(s) applicable to the peril that necessitated such costs; however, where covered physical loss or damage to Covered Property is less than the applicable deductible(s), loss adjustment costs shall not be applied to the total amount of the loss for purposes exceeding the deductible.

Claim preparation costs include:
A. The cost of using the Insured's employees for producing and certifying any particulars or details contained within the Insured's books or documents, or such other proofs, information or evidence required by the Company;
B. The cost of taking inventory, obtaining independent appraisals, and gathering and preparing other data to substantiate the extent or amount of loss or damage; and
C. Fees payable to the Insured's accountants, auditors, contractors, architects, engineers and other professionals solely for the purpose of determining the extent or amount of loss or damage.

Claim preparation costs do not include the fees and costs of attorneys, public adjusters, loss consultants, and loss appraisers retained by the Insured or a subsidiary or affiliate of the Insured for the purpose of or associated with:
I. establishing that any claim or part of a claim is covered by the Policy;
II. negotiation or presentation of any claim or part of a claim that the Company has advised the Insured is disputed or denied;
III. representing the Insured's interests in the adjustment of a claim; and
IV. any examination under oath, even if requested by the Company.

The most the Insurer will pay under this coverage extension will not exceed the applicable limit of insurance shown in the sublimits section of this policy. This additional coverage is provided within, not in addition to, the Limit of Insurance stated in the Declarations.

**38. Loss Adjusters**

It is hereby understood and agreed that the adjuster listed below is appointed third party claims administrator and loss adjuster.

Engle Martin & Associates

**39. Loss Payable**

Loss, if any, shall be adjusted with and payable to the Named Insured or as directed by the Named Insured, who's receipt of loss payment shall constitute a release in full of all liability under this policy with respect to such loss.

**40. Definitions**

The following terms whenever used in this policy shall mean:

**A. Actual Cash Value**

The cost to repair or replace the damaged property, minus depreciation of materials and applicable labor.

**B. Architect Fees and Engineering Fees**

Any cost associated with the preparation of plans for the repair or reconstruction of the damaged property.

**C. Bacteria**

**Bacteria** means any type or form of bacterium; or any by-product that is produced or released by such bacterium.

**D. Back up of Sewers, Drains and Sump Systems**

**Back up of Sewers, Drains and Sump Systems** coverage under this policy shall refer to accidental direct physical loss of or damage to Covered Property caused by or resulting from:

   (1) water or sewage that enters the building through sewers or drains; or

   (2) water which overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area.

Covered Property means the type of property described in Clause 7. 'Coverage', and limited in 9. 'Property Excluded'. Coverage for **Back up of Sewers, Drains and Sump Systems** shall not be extended to include loss or damage caused by an insured's negligence.

**E. Contaminants or Pollutants**

Means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, **bacteria**, fungi, virus, or hazardous substances as listed in the Federal Water, Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

**F. Earth Movement**

The term **Earth Movement** as used in this policy shall mean loss or damage caused by or resulting from any natural, human, or animal forces with or without the displacement of the earth including but not limited to earthquake (including resultant tsunami) or landslide, **sinkhole**, regardless of any other cause or event contributing concurrently or in any other sequence of loss.

However, any resultant physical damage from the proximate cause of **Earth Movement** such as fire or sprinkler leakage not otherwise excluded by the policy will not be considered to be loss by **Earth Movement** within the terms and conditions of this policy.

**G. Electronic Data Processing Systems**

**Electronic Data Processing Systems** shall include, but not be limited to, transferring equipment, computer systems, telecommunications systems or electronic control equipment and component parts.

**H. Electronic Data Processing Media**

All forms of data, converted data, electronically converted data and/or programs and/or applications and/or instructions and/or media vehicles employed.

**I. Fine Arts**

**Fine Arts** shall include, but not be limited to, bona fide works of art, works of rarity, works of historical value, works of artistic merit, photographs, (positives and negatives) lithographs, illustrations, galley proofs, and original records.

**J. Fire Brigade Charges/Fire Extinguishing Materials and Expenses**

Firefighting and/or containment charges and/or fire department service charges and other extinguishing expenses.

**K. Flood**

The term **Flood** as used in this policy shall mean loss or damage caused by or resulting from waves, tide, or tidal water, and the rising (including the overflowing or breakage of boundaries) of lakes, ponds, reservoirs, rivers, harbors, streams, and similar bodies of water; mudslide or mudflow; water on or below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basements or other floors, or through doors, windows or other openings in such sidewalks, driveways, foundations, walls or floors; storm surge resultant from **Named Storm**. However, loss or damage resulting from fire, explosion, theft, vandalism, sprinkler leakage, or any other cause of loss not otherwise excluded by the policy shall not be deemed to be **Flood**.

**L. Fraudulent or Dishonest Act(s)**

**Fraudulent or Dishonest Act(s)** committed by the Insured or the Insured's employees with the manifest intent to:

  (1) cause the Insured to sustain such loss; and

  (2) obtain financial benefit for the Insured, Insured's employee, or for any other person or organization intended by the Insured or the employee to receive such benefit for such **fraudulent or dishonest act(s)**.

**M. Land Improvements**

**Land Improvements** as described hereunder shall mean, any alteration to the natural condition of the land by grading, filling, shoring, excavating, landscaping, irrigation or drainage systems, earthen dikes or dams, as well as additions to land such as pavements, retaining walls, roadways, ponds, golf courses, tennis courts, swimming pools, or similar works;

**N. Interest of the Insured as Lessee**

**Interest of the Insured as Lessee** shall mean the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

**O. Miscellaneous Unnamed locations**

Any location which is not specifically on file, identified, or scheduled. No coverage is provided under this provision for property while in **Transit** or waterborne.

**P. Mold or Fungi**

**Mold or Fungi** shall mean any type or form of mold or mildew; any other type or form of fungus; or any mycotoxin, spore, scent or by-product that is produced or released by such mold, mildew, or other fungus.

**Q. Named Storm**

A storm or weather condition that at the time of loss: (1)has sustained wind speeds of at least 74 miles per hour; and (2)has been declared by the U.S. National Weather Service to be a hurricane, typhoon, tropical storm, or cyclone.

**R. Net Lease Interest**

**Net Lease Interest** shall mean that sum, which placed at 6 percent interest compounded annually will be equivalent to the **Interest of the Insured as Lessee**.

**S. Occurrence**

The term **occurrence** means the aggregate loss by any peril or combination of perils insured against arising out of a single event, during a continuous period of 72 hours, except as specified below.

When the term applies to theft, vandalism, malicious mischief or riot, the sum total of all losses of property and/or interests insured herein resulting directly from one or more **fraudulent or dishonest act(s)** committed by a person(s) acting alone or in collusion with others shall constitute one **occurrence**.

**T. Ordinary Payroll**

**Ordinary Payroll** is the entire payroll expense for all employees of the Insured except officers, executives, and employees under contract.

**U. Personal Property**

**Personal Property** is defined as all equipment and contents owned by or in the Insured possession for which they are legally liable for located at a location insured hereunder. **Personal Property** does not include property located 1,000 feet from the insureds location insured hereunder.

**V. Real Property**

**Real Property** is defined as the building structure at the location insured including all permanent fixtures affixed on the exterior or interior of the building; foundations; underground pipes, flues, drains and wiring.

**W. Sinkhole**

**Sinkhole** is defined as the loss or damage to Covered Property when structural damage to the covered building, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered building, only if the settlement or systematic weakening results from contemporaneous movement or ravelling of soils, sediments, or rock materials into subterranean voids created by the effects of water on a limestone or similar rock formation.

**X. Soft Costs**

Expenses related to the delay of completion of a course of construction project over and above those costs which would have been incurred, including, but not limited to, interest payments on financing under loan agreements and real estate taxes accruing during the period of delay. The term **Soft Costs** shall include:

(1)  extra construction costs the Insured incurs to continue construction and meet contract dates;
(2)  construction loan interest on money borrowed to finance construction or repair;
(3)  realty taxes and other assessments on the construction site accruing during the period of delay;
(4)  architect, engineering and consultant fees;
(5)  insurance premiums;
(6)  advertising and promotional expenses which become necessary as a result of the covered loss;
(7)  accounting and attorney fees;
(8)  costs and commissions resulting from renegotiating leases which directly result from the covered loss.

**Y. Transit**

Shipments within and between the territorial limits of this policy, including the coastal waters thereof, by any means of conveyance, from the time the property is moved for purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage including temporary storage on any conveyance intended for use for any outbound or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

**Z. Underlying Policy**

An insurance policy issued to the Insured which is similar as respects the terms and conditions of this policy and issued for limits below the attachment point or deductible of this policy.

**AA. Vacant**

**Vacant** means that less than 50% of a building's total rentable square footage is used by the building owner to conduct customary operations and/or rented to a

lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations. Customary operations are further defined as the common operations and activities of the lessee or sub-lessee when using the building for its intended purpose.

**BB. Valuable Papers and Records**

Written, printed or otherwise inscribed documents, and records including but not limited to books, maps, films, drawings, abstracts, deeds, mortgages, mortgage files, manuscripts and micro or electronically/magnetically inscribed documents, but not including the monetary value of monies and/or securities.

## 41. Priority of Payments

At the sole option of the insured, any recoveries made under this policy may be applied to loss or damage to Interests or Perils not insured by the excess policies. Any excess coverage shall accept the underlying limits as having been reduced or exhausted, and attach their limits and coverage at such reduced amount, subject to the excess policies limits and interests covered.

## 42. Breach of Warranty or Condition

If a breach of any warranty or condition contained in this policy or any endorsement attached to or made a part of this policy shall occur, which breach by the terms of such warranty or condition, shall operate to suspend or avoid this insurance, it is agreed that such suspension or avoidance due to such breach shall only apply as to the building, fire division, contents, therein, or other separate location to which such warranty or condition has reference and in respect of which such breach occurs.

## 43. Conflicting Provisions

The terms and conditions of this manuscript form and endorsements attached thereto shall supersede those of any preprinted policy jacket and forms to which it is attached where in conflict.

## 44. Concealment, Misrepresentation or Fraud

This policy is void in any case of fraud by the Named Insured as it related to this policy at any time. It is also void if the Named Insured or any other insured, at any time, intentionally conceals or misrepresents a material fact concerning:
 a) This policy;
 b) Property insured under this policy;
 c) The Named Insured or any other insured's interest in the property insured under this policy; or
 d) A claim made under this policy.

## 45. Duties of the Named Insured in the Event of Loss or Damage

It is a condition precedent to any payment of loss that the Named Insured must see that the following are done in the event of loss or damage to insured property as soon as possible:

 A. Notify the police if a law may have been broken.
 B. Give the Company immediate notice of loss or damage including a description of the property involved.
 C. Give the Company a description of how, when and where the loss or damage occurred.

D.   Take all reasonable steps to protect insured property from further damage by a peril insured against. If feasible, set the damaged property aside and in the best possible order for examination. Also, the Named Insured shall keep a record of expenses for emergency and temporary repair, for consideration in the settlement of the claim. Any record of expenses will not increase the applicable limit of insurance.

E.   At the Company's request, give the Company complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

F.   Permit the Company to inspect the property and records proving the loss or damage. Also permit the Company to take samples of damaged property for inspection, testing and analysis.

G.   Cooperate with the Company and its retained adjustors and experts in the investigation of the claim by providing requested documents and information as soon as possible.

H.   If requested, both the Named Insured and any of its employees submit under oath, to questioning, at such times as may be reasonably required about any matter relating to this insurance or the Named Insured's claim, including the Named Insured's books and records. In such event, the Named Insured's and employees' answers must be signed.

I.   Send the Company a signed, sworn statement of loss containing the information requested by the Company to investigate the claim. The Named Insured must do this within 60 days of the Company's request. The Company will supply the Named Insured with the necessary forms.

## 46. Conformity to Statute

Terms of this policy in conflict with the written laws of the state in which the policy is issued are changed to conform to such laws.

### Endorsement No. 1 - Joint Loss Adjustment Agreement

With respect to insurance provided by this policy, it is agreed that:

1. If at the time of loss, there is in existence a policy(ies) issued by either this Company or by a boiler and machinery insurance company which may cover the same property or cover the location at which the property subject to loss is situated; and

2. If there is a disagreement between the companies under this policy and such other contract either as to:

   a) whether such damage or destruction was caused by a peril insured against by this policy or by an accident insured against by such boiler and machinery insurance policy; or

   b) the extent of participation of this policy and of such boiler and machinery insurance policy in a loss which is insured against, partially or wholly, by any one or all of said policies;

3. This Company shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than this company would have paid if there had been no boiler and machinery insurance policy in effect, subject to the following conditions:

   a) the amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the companies is limited to the minimum amount remaining payable under either the boiler and machinery or this policy(ies);

   b) the boiler and machinery insurance company shall simultaneously pay to the Insured at least one half of said amount which is in disagreement;

   c) the payments by the companies hereunder and acceptance of the same by the Insured signify the agreement of the companies to submit to and proceed with arbitration within ninety (90) days of such payments.

   The arbitrators shall be three in number, one of whom shall be appointed by the boiler and machinery insurance company, one of whom shall be appointed by this Company, and the third of whom shall be appointed by consent of the other two. The decision by the arbitrators shall be binding on the companies and that judgment upon such an award may be entered in any court of competent jurisdiction;

   I. the Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

   II. the provisions shall not apply unless such other policy issued by the boiler and machinery insurance company is similarly endorsed;

   III. acceptance by the Insured of sums paid pursuant to the provisions, including any arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the companies.

## Endorsement No. 2 - Wind Tier Counties

**Tier 1 Counties and Tier 2 Counties**, is defined in this policy form as all counties and parishes in the states and territories listed below.

### Tier 1 Counties are as follows:

| | |
|---|---|
| ALABAMA | Baldwin, Mobile |
| CONNECTICUT | Fairfield, Middlesex, New Haven, New London |
| DELAWARE | Kent, New Castle, Sussex |
| FLORIDA | Entire State |
| GEORGIA | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| HAWAII | Entire State |
| LOUISIANA | Parishes of: Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Mary, St. Tammany, Terrebonne, Vermilion |
| MAINE | Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York |
| MARYLAND | Anne Arundel, Baltimore, Baltimore City, Calvert, Cecil, Dorchester, Harford, Kent, Queen Anne's, Somerset, St. Mary's, Talbot, Wicomico, Worcester |
| MASSACHUSETTS | Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth, Suffolk |
| MISSISSIPPI | Hancock, Harrison, Jackson |
| NEW HAMPSHIRE | Rockingham |
| NEW JERSEY | Atlantic, Burlington, Cape May, Cumberland, Hudson, Middlesex, Monmouth, Ocean, Salem |
| NEW YORK | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester |
| NORTH CAROLINA | Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrell, Washington |
| PUERTO RICO | Entire Territory |
| RHODE ISLAND | Bristol, Kent, Newport, Providence, Washington |
| SOUTH CAROLINA | Beaufort, Charleston, Colleton, Georgetown, Horry, Jasper |
| TEXAS | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio, Victoria, Willacy |
| VIRGINIA | Accomack, Chesapeake, Gloucester, Hampton, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Suffolk, Surry, Virginia Beach, Westmoreland, Williamsburg, York |

| US VIRGIN ISLANDS | Entire Territory |
|---|---|

**Tier 2 Counties** are as follows:

| | |
|---|---|
| ALABAMA | Clarke, Covington, Escambia, Geneva, Monroe, Washington |
| CONNECTICUT | Hartford, Litchfield, Tolland, Windham |
| GEORGIA | Brantley, Bulloch, Charlton, Effingham, Evans, Long, Tattnall, Wayne |
| LOUISIANA | Acadia, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John the Baptist, St Martin, Tangipahoa, Washington |
| MAINE | Androscoggin, Kennebec, Oxford, Penobscot |
| MARYLAND | Caroline, Carroll, Charles, Howard, Prince George's |
| MASSACHUSETTS | Middlesex, Worcester |
| MISSISSIPPI | George, Greene, Pearl River, Stone |
| NEW HAMPSHIRE | Belknap, Carroll, Hillsborough, Merrimack, Strafford |
| NEW JERSEY | Bergen, Camden, Essex, Gloucester, Mercer, Passaic, Somerset, Union |
| NEW YORK | Putnam, Rockland |
| NORTH CAROLINA | Bladen, Columbus, Duplin, Gates, Halifax, Hertford, Jones, Lenoir, Martin, Northampton, Pitt, Sampson |
| PENNSYLVANIA | Bucks, Chester, Delaware, Lancaster, Philadelphia, York |
| SOUTH CAROLINA | Bamberg, Berkeley, Dillon, Dorchester, Florence, Hampton, Marion, Williamsburg |
| TEXAS | Bee, Brooks, Fort Bend, Goliad, Hardin, Hidalgo, Jasper, Jim Wells, Lavaca, Liberty, Live Oak, Montgomery, Newton, Orange, Waller, Wharton |
| VIRGINIA | Charles City, Colonial Heights, Essex, Fairfax, Franklin city, Hopewell, King and Queen, King George, King William, New Kent, Prince George, Prince William, Richmond, Southampton, Stafford, Sussex, Polk, Putnam, Seminole, Sumter, Washington |

Endorsement No. 3 – **Mold or Fungi, Bacteria**, or Wet or Dry Rot - Additional Conditions

A.  This policy only insures physical loss or damage to insured property to mold, mildew or fungus when directly caused by a peril insured by this Policy occurring during the policy period.

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1.  The said property must otherwise be insured under this policy for physical loss or damage by that peril.

2.  The Insured must report to Insurers the existence and cost of the physical loss or damage by mold, mildew or fungus as soon as practicable, but no later than thirty (30) days after the peril first caused any physical loss or damage to insured property during the policy period. This policy does not insure any physical loss or damage by mold, mildew or fungus first reported to Insurers after that thirty (30) day period.

3.  Regardless of circumstance or other policy provisions, the maximum amount insured and payable under this policy for all mold, mildew or fungus caused by or resulting from such peril is the amount stated in the sublimits contained herein.

B.  Except as set forth in the foregoing Section A, this policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:

mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.

This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal, cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

<u>Endorsement No. 4 – U.S. Terrorism Risk Insurance Act of 2002 as Amended – Not Purchased</u>
<u>Clause</u>

This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.

It is hereby noted that the Insurers have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

<u>Endorsement No. 5 - Asbestos</u>

A.  This Policy only insures asbestos physically incorporated in an insured building or structure, and then only that part of the asbestos which has been physically damaged during the period of insurance by one of these Listed Perils:

fire; explosion; lightning; windstorm; hail; direct impact of vehicle, aircraft or vessel; riot or civil commotion, vandalism or malicious mischief; or accidental discharge of fire protective equipment.

This coverage is subject to each of the following specific limitations:

1.  The said building or structure must be insured under this Policy for damage by that Listed Peril.

2.  The Listed Peril must be the immediate, sole cause of the damage of the asbestos.

3.  The Insured must report to Insurers the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos. However, this Policy does not insure any such damage first reported to the Insurers more than 12 (twelve) months after the expiration, or termination, of the period of insurance.

4.  Insurance under this Policy in respect of asbestos shall not include any sum relating to:

    (i)   any faults in the design, manufacture or installation of the asbestos;

    (ii)  asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.  Except as set forth in the foregoing Section A, this Policy does not insure asbestos or any sum relating thereto.

<u>Endorsement No. 6 – Application of Sublimits Endorsement</u>

1. Application to **Insured Interests**. Each sublimit stated in this policy applies as part of, and not in addition to, the overall policy limit for an **Occurrence** insured hereunder. Each sublimit is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to that aspect of the **Occurrence**, including but not limited to type of property, construction, geographic area, zone, location, or peril.

2. Application within **Perils**. If insured under this policy, any sublimit for earthquake, **Earth Movement**, windstorm, **Named Storm** is the maximum amount potentially recoverable from all insurance layers combined for all insured loss, damage, expense, time element or other insured interest arising from or relating to such an **Occurrence**.

   This endorsement takes precedence over and, if in conflict with any other wording in the contract bearing on the application of sublimits, replaces that wording.

MPP 11 16 Coverage Form                                                                 Page **39 of 44**

Endorsement No. 7 – Notice of Service Of Suit

In the event the Insured feels that the Insurer have failed to pay a claim according to the terms of the policy, the Insured may start "suit" against the Insurer. The Insurer will obey the order of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give the Court jurisdiction, and all such matters shall be determined according to the law and practice of the Court.

In any "suit" brought against the Insurer concerning the Insured's policy, the Insurer will abide by the final decision of the Court, including any appellate Court in the event of the appeal.

Service of Suit may be made upon the General Counsel of Rockhill Insurance Company, 700 W. 47th Street, Suite 350, Kansas City, MO 64112. He is authorized and directed to accept Service of Suit on our behalf and/or provide written notice that the Insurer will appear in Court, if "suit" is instituted.

If required by the Insured's state statutes, the Insurer hereby designates the Commissioner of Insurance, or any other officer specified by the statute, or his successors in office, as our true and lawful attorney for Service of Suit instituted by the Insured, or on the Insured's behalf or on behalf of the Insured's beneficiary, in regard to the Insured's policy, and designated that such process should be mailed to the General Counsel of Rockhill Insurance Company at our address shown above.

## Endorsement No. 8 – Short Rate Cancellation Endorsement

Notwithstanding anything to the contrary contained herein and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the Insured the earned premium shall be computed as follows:

### SHORT RATE CANCELLATION TABLE

A.     For insurance written for one year:-

| Days Insurance In Force | % of One Year Premium | Days Insurance In Force | % of One Year Premium |
|---|---|---|---|
| 1 | 5 | 154 - 156 | 53 |
| 2 | 6 | 157 - 160 | 54 |
| 3 - 4 | 7 | 161 - 164 | 55 |
| 5 - 6 | 8 | 165 - 167 | 56 |
| 7 - 8 | 9 | 168 - 171 | 57 |
| 9 - 10 | 10 | 172 - 175 | 58 |
| 11 - 12 | 11 | 176 - 178 | 59 |
| 13 - 14 | 12 | 179 - 182 (6 Months) | 60 |
| 15 - 16 | 13 | 183 - 187 | 61 |
| 17 - 18 | 14 | 188 - 191 | 62 |
| 19 - 20 | 15 | 192 - 196 | 63 |
| 21 - 22 | 16 | 197 - 200 | 64 |
| 23 - 25 | 17 | 201 - 205 | 65 |
| 26 - 29 | 18 | 206 - 209 | 66 |
| 30 - 32 (1 Month) | 19 | 210 - 214 (7 Months) | 67 |
| 33 - 36 | 20 | 215 - 218 | 68 |
| 37 - 40 | 21 | 219 - 223 | 69 |
| 41 - 43 | 22 | 224 - 228 | 70 |
| 44 - 47 | 23 | 229 - 232 | 71 |
| 48 - 51 | 24 | 233 - 237 | 72 |
| 52 - 54 | 25 | 238 - 241 | 73 |
| 55 - 58 | 26 | 242 - 246 (8 Months) | 74 |
| 59 - 62 (2 Months) | 27 | 247 - 250 | 75 |
| 63 - 65 | 28 | 251 - 255 | 76 |
| 66 - 69 | 29 | 256 - 260 | 77 |
| 70 - 73 | 30 | 261 - 264 | 78 |
| 74 - 76 | 31 | 265 - 269 | 79 |
| 77 - 80 | 32 | 270 - 273 (9 Months) | 80 |
| 81 - 83 | 33 | 274 - 278 | 81 |
| 84 - 87 | 34 | 279 - 282 | 82 |
| 88 - 91 (3 Months) | 35 | 283 - 287 | 83 |
| 92 - 94 | 36 | 288 - 291 | 84 |
| 95 - 98 | 37 | 292 - 296 | 85 |
| 99 - 102 | 38 | 297 - 301 | 86 |
| 103 - 105 | 39 | 302 - 305 (10 Months) | 87 |
| 106 - 109 | 40 | 306 - 310 | 88 |
| 110 - 113 | 41 | 311 - 314 | 89 |
| 114 - 116 | 42 | 315 - 319 | 90 |
| 117 - 120 | 43 | 320 - 323 | 91 |
| 121 - 124 (4 Months) | 44 | 324 - 328 | 92 |
| 125 - 127 | 45 | 329 - 332 | 93 |
| 128 - 131 | 46 | 333 - 337 (11 Months) | 94 |
| 132 - 135 | 47 | 338 - 342 | 95 |
| 136 - 138 | 48 | 343 - 346 | 96 |
| 139 - 142 | 49 | 347 - 351 | 97 |
| 143 - 146 | 50 | 352 - 355 | 98 |
| 147 - 149 | 51 | 356 - 360 | 99 |
| 150 - 153 (5 Months) | 52 | 361 - 366 (12 Months) | 100 |

B. For Insurances written for more or less than one year:

    1.   If insurance has been in force for 12 months or less, apply the short rate table to the full annual premium determined as for an insurance written for a term of one year.

    2.   If insurance has been in force for more than 12:

        a)  Determine full annual premium as for an insurance written for a term of one year.

        b)  Deduct such premium from the full insurance premium and on the remainder calculate the pro-rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

        c)  Add premium produced in accordance with items a) and b) to obtain earned premium during the full period of insurance that has been in force.

Endorsement No. 9 - Hurricane Minimum Earned Premium Endorsement

For locations situated in Counties on the 1st Tier Wind County or 2nd Tier Wind County lists, the following provisions apply:

This clause replaces the cancellation provisions in regards to refund or return premium calculations if Insurers cancel the policy for non-payment of premium or the First Named Insured cancels or removes from the policy, a location(s) situated in Counties on the 1st Tier Wind County or 2nd Tier Wind County lists.

If Insurers cancel this policy for non-payment of premium or the First Named Insured cancels or removes from the policy, a Location(s) situated in Counties on the 1st Tier Wind County or 2nd Tier Wind County lists, then the minimum premium earned for this policy, if cancelled, or for the removed Location(s) may be based on the schedule below:

Minimum Earned Premium:

A.  If insurance has been in force for up to 12 months or less, the following will apply:

    1)  80% of the Total Premium excluding TRIA shown in the Declarations, or the Location Premium for the removed location(s), if coverage for the policy or the removed Location(s) was in effect at any time during the period from June 1st to November 30th.

    2)  25% of the Total Premium excluding TRIA shown in the Declarations, or the Location Premium for the removed location(s), if coverage for the policy or the removed Location(s) was NOT in effect at any time during the period from June 1st to November 30th.

B.  If insurance has been in force for more than 12 months, 100% of the Total Premium excluding TRIA shown in the Declarations.

In the event that none of the above criteria are in effect, 25% Minimum Earned Premium to apply.

## Endorsement No. 10 - Wind Driven Precipitation Sublimit

When shown as "Included" or with a sublimit, this policy is extended to cover Wind Driven Precipitation as described and limited below.

The Insurer will pay for direct physical loss or damage to the interior of any building or structure, or to **Personal Property** in the building or structure caused by or resulting from rain, snow, sleet or ice, when driven by wind when loss occurs despite there being no physical damage to the exterior or the building or structure.

### Additional Exclusions:

The Insurer will not pay for loss or damage caused directly or indirectly by any of the following:

1) Sand or dust, unless the building or structure first sustains damage caused by a Covered Cause of Loss to its roof or walls through which the sand or dust enters;
2) Thawing of snow, sleet or ice on the building or structure; or
3) Faulty, inadequate or defective:
   a) Planning, zoning, development, surveying, siting;
   b) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) Materials used in repair, construction, renovation or remodeling; or
   d) Maintenance;

of part or all of any property on or off the described premises.

The deductible for Wind Driven Precipitation will be the same deductible applicable to a **Named Storm** event; whether it is the **Named Storm** deductible for **Tier 1 Counties** or **Tier 2 Counties** if coverage is afforded with this policy, or the deductible applicable to Wind in a County outside of Tier 1 or Tier 2.

In the event that there is no physical damage from the perils above, the maximum payable will not exceed the sub-limit specified in Section 3 of this policy.

Endorsement No. - Catastrophic Ground Cover Collapse Endorsement

In regards to Florida locations; when shown as "Included" or with a sublimit, this policy is extended to cover direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

   a)  The abrupt collapse of the ground cover;

   b)  A depression in the ground cover clearly visible to the naked eye;

   c)  Structural damage to the building, including the foundation; and

   d)  The insured structure being condemned and ordered to be vacated by the governmental Agency authorized by law to issue such an or-der for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion and the Collapse exclusion do not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as **Sinkhole** Loss or Earthquake (if either or both of those causes of loss are covered under this Coverage Part), only one Limit of Insurance will apply to such loss or damage.

All Other Terms and Conditions of the Policy Remain Unchanged.

## SIGNATURE ENDORSEMENT

By signing and delivering the policy to you, we state that it is a valid contract when countersigned by our authorized representative

**ROCKHILL INSURANCE COMPANY**
Kansas City, Missouri

_Melissa A. Centers_
_____
Melissa A. Centers
Secretary

_Michael E. LaRocco_
_____
Michael E. LaRocco
President

**RHIC 1101 (01/16)**                                                    Page 1 of 1

### APPENDIX A – Sublimits Endorsement

It is hereby understood and agreed that the sublimits contained in the policy attached are amended to a maximum per occurrence sublimit as shown below:

| Extensions of Coverage* | Limits |
|---|---|
| Earthquake (Excluded in CA, WA, AK and HI) | Excluded |
| Flood (SFHA, including but not limited to Zones A & V, undetermined, and 100 year flood plans excluded) | Excluded |
| Accounts Receivable | $25,000 |
| Additional Required Property Management Fees | $10,000 |
| Business **Personal Property (Fine Arts** Inclusive within Sublimits) | $10,000 |
| Newly Acquired Property (30 Days Reporting) | $100,000 |
| **Back up of Sewers, Drains and Sump Systems** - other than **Flood** | $15,000 |
| Building Ordinance including Increased Cost of Construction: | |
| o  Coverage A (Loss undamaged **Real Property**) | Included |
| o  Coverage B (Demolition) and Coverage C (Increased Cost of Construction) | $1,000,000 Maximum B&C Combined |
| o  Coverage D (Increased Business Income, Rents) | Excluded |
| Cancellation Clause | 90/10 day Non-Pay |
| Civil Authority | Excluded |
| Debris Removal | 25% of Loss / $50,000 whichever is less |
| **Electronic Data Processing Equipment** and **Electronic Data Processing Media** | $2,500 |
| Expediting Expense | $10,000 |
| Extra Expense | $10,000 |
| Fire Department Service Charge / Fire Fighting Materials & Expenses | $25,000 |
| Mold Resulting from Covered Cause of Loss | $15,000 |
| Landscaping - including Plants, Lawns, Shrubs, or Trees | Excluded |
| Lock and Key Replacement | $2,500 |
| **Miscellaneous Unnamed Location(s)** Coverage, excluding Tier 1 Wind | Excluded |
| Miscellaneous **Personal Property** | As shown per the SOV, and $10,000 for All Other |
| Decontamination and Clean Up Expense - Per **Occurrence** and Annual Aggregate | $15,000 |
| Pools, Tennis Courts, Playground Equipment & Recreational Equipment | $25,000 |
| Preparation Proof of Loss/Professional Fees (Excluding Public Adjuster Fees/Appraiser Fees/Attorney Fees) | $10,000 |
| Protection and Preservation of Property | $5,000 |
| Reward (Arson, Crime) | $10,000 |
| **Transit** and Transportation | $10,000 |
| **Valuable Papers and Records** | $25,000 |
| Wind Driven Precipitation | Not Covered |

\* These limits are the maximum available. All sublimits apply per Occurrence unless otherwise noted.

All other terms and conditions remain unchanged.

### APPENDIX B - Deductibles Endorsement

It is hereby understood and agreed the following wording is added to clause 4. Deductibles:

## 4.  DEDUCTIBLES

This schedule sets forth the minimum deductibles applicable per occurrence applicable hereunder.

Each o**ccurrence** of covered loss or damage under this policy shall be subject to a deductible of $5,000 per **occurrence**, unless a specific peril deductible shown below applies:

### A.  Wind / Hail:

- 50,000 Per **Occurrence** Per location, except:

Named Storm:

- SEE ATTACHED - NAMED STORM / CALENDER YEAR HURRICANE DEDUCTIBLE ENDORSEMENT

### B.  Flood:

- EXCLUDED per location per **occurrence**, except:

- EXCLUDED any one occurrence Flood, except excess of maximum available limits provided by National Flood Insurance Program (NFIP), whether purchased or not, plus 5 day waiting period for time element coverage at all locations situated in Flood Zone A or V as defined by FEMA. "A" or "V" also includes various suffixes to those "A" or "V" designated areas.

### C.  Earth Movement:

- Excluded per location per **occurrence**, except:

### D.  Water Damage

- $10,000

### E.  Catastrophic Ground Cover Collapse:

- 3% Per **Occurrence** Per location

Additional Deductible Provisions

Unit of Insurance is defined as:

a)  Each building or structure sustaining loss or damage
b)  Personal property within each building or structure if that personal property sustains loss or damage
c)  Personal property in the open that sustains loss or damage
d)  The Time Element values impacted by the direct loss or damage to said property that sustains loss or damage

The values to be used when calculating the deductibles above shall be either those as specified for each unit of insurance as shown in the most recent Statement of Values on file with the Insurer, or if the property damaged is a building in the course of construction or renovation, the values will be determined at the time of loss. When the Time Element values are to be determined at the time of loss, the values will be calculated for the twelve (12) months following the inception date of the policy term in which the loss occurs.

Time Element as used herein refers to the following coverages:
a)  Business Interruption
b)  Extra Expense
c)  Leasehold Interest
d)  Rental Value and Rental Income
e)  Contingent Business Interruption
f)  Commissions, Profits, and Royalties
g)  Ingress/Egress
h)  Civil or Military Authority

This policy shall only be liable for loss or damage covered by policy which exceeds the applicable deductible shown above. If more than one insured **Location** sustains covered loss or damage in the same **occurrence**, the deductible shall apply against the total loss or damage to all covered **Locations**. If two or more deductibles shown above apply to a single **occurrence**, the deductible shall be the largest deductible applicable.

**APPENDIX – MARKET SECURITY**

This Schedule sets forth the participating insurers to the coverage provided herein, and the limits apply Per Occurrence.

For any insurer set forth below, whose participation is subject to an aggregate Limit for any specific peril, coverage, or participation, then that Limit is the maximum amount payable for that Insurers' participation. Once that Limit has been exhausted then the insurer set forth below will no longer have any further Liability under this Insurance contract.

Notwithstanding the available Limits set forth below, the individual limits and sublimits set forth in the Policy, to which this Schedule is attached and incorporated therein by reference, are the only limits available for the Named Insured and their identified insured locations(s):

| Coverage / Policy | Policy # | % of Overall Limit |
|---|---|---|
| **Property** | | |
| Rockhill Insurance Company (Lead) | RCPPRU000025-00 | 0.91% |
| Colony Insurance Company | XP263866 | 0.91% |
| Evanston Insurance Company | MKLV11XP005271 | 0.91% |
| First Specialty Insurance Corp. | ESP2002046 00 | 2.27% |
| Hallmark Specialty Insurance Company / Lloyds of London | 93PRX16EDCB / 73PRX16EDCA | 0.45% |
| Homeland Insurance Co. of New York | 795005378 | 4.55% |
| Lexington Insurance Co. | 061628735/00 | 25.00% |
| Liberty Surplus Insurance Corp. | 1000125847-03 / 1000238406-01 | 3.64% |
| Lloyd's of London | B1230AP04438A16 | 4.55% |
| Mitsui Sumitomo Insurance Co. of America | EXP7000413 | 9.09% |
| Rockhill Insurance Company | RCPXRU000010-00 | 4.55% |
| RSUI Indemnity | NHD398666 / NHD398667 | 31.82% |
| Scottsdale Insurance Company | AJS0000461 | 9.09% |
| United National Insurance Company | LP000846 | 2.27% |
| **Terrorism** | | |
| Underwriters at Lloyd's – Syndicate 623/2623 | W1A3DC160201 | 100.00% |
| **Boiler & Machinery** | | |
| Travelers Property Casualty Company of America | BME1-9H293713-TIL-16 | 100.00% |

**Underlying/Other Insurance**
On Occasion the Insurers listed above may benefit from underlying (Re)insurance coverage, which may inure to the benefit of their attachment point, as it relates to certain and/or all perils and interests insured herein. Should such Insurance exist it does not change the limit contained on the Declaration page of this policy or any sublimits elsewhere included, nor does it alter coverages and terms contained within this policy.

**Several Liability:**
PLEASE NOTE – This notice contains important information. PLEASE READ CAREFULLY.
The liability of an insurer under this contract is several and not joint with other insurers party to this contract. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown above.

## NAMED STORM / CALENDER YEAR HURRICANE DEDUCTIBLE ENDORSEMENT

**Named Insured:**     **Saltponds Condominium Association Inc.**
**Policy #:**          **EB3R16-10008**

It is hereby noted and agreed the following coverage is made a part of this policy, subject to the specific terms and conditions outlined below:

This policy insures against All Risks of Direct Physical Loss or Damage from **Named Storm** as listed in the Declaration Page attached hereto, occurring during the policy period as defined in the Declaration Page.

### Definition(s)

The term **Named Storm** wherever used in this endorsement shall mean a storm or weather condition has been declared by the U.S. National Weather Service to be a Hurricane, Tropical Depression, Typhoon, Cyclone or Tropical Storm.

The term **Hurricane** wherever used in this endorsement shall mean a storm or weather condition that at the time of loss has sustained wind speeds of at least 74 miles per hour; and has been declared by the U.S. National Weather Service to be a **Named Storm.**

The term **Occurrence** as used in this endorsement shall mean the sum total of all losses arising out of or caused by the same atmospheric disturbance during any period of 72 consecutive hours.

The term **Calendar Year** as used in this endorsement shall mean January 1 to December 31 of the same year.

### Limit
This policy will not pay more than the carrier's percent (%) participation per the schedule of perils, layers, carriers and participations endorsed to this policy but never for more than the amount shown on the Declaration Page of the policy.

### Hurricane Deductible
When a **Hurricane** results in loss or damage, each and every loss will be subject to the following Deductible(s).

- **Real and Personal Property:**

  3% (or $ equivalent) **Calendar Year Deductible**, subject to a minimum of $100,000 per **Occurrence**

---

NSCYHD 07 17                                                        Page **1** of **2**

- **Time Element:** Excluded

The **Hurricane** Deductible(s), as described above, will apply anew in each calendar year. If the policy period does not coincide with the calendar year, then a separate **Hurricane** Deductible(s) will apply to loss or damage that occurs during each calendar year in which the policy is in force. For example, if your policy period is from July 1 of calendar year 1 to June 30 of calendar year 2, a separate **Hurricane** Deductible(s) applies to loss or damage occurring from July 1 to December 31 of calendar year 1 and to loss or damage occurring from January 1 to June 30 of calendar year 2.

When a **Hurricane** results in loss or damage that exhausts or depletes the **Hurricane** location Deductible, then the **Hurricane** Deductible remaining will apply to loss or damage from a subsequent **Hurricane**(s) in the same **Calendar Year**, as follows:

a. Once all, or a partial amount, of the **Hurricane** Deductible(s) has been fulfilled at a location then future losses will be subject to either the balance of the **Hurricane** Deductible(s) of that location that is remaining or the **$50,000** Wind/Hail per Occurrence deductible, irrespective of the number of locations involved in the loss, whichever the greater shall apply.

b. If a **Named Storm** claim involves locations where the **Hurricane** Deductible(s) has been partially or wholly satisfied but also the occurrence involves locations that have not been affected by prior claims activity then the deductible will be the balance of the location **Hurricane** Deductible(s) plus the **$50,000** Wind/Hail per Occurrence deductible collectively for locations where the **Hurricane** Deductible(s) was previously satisfied.

c. Once all locations have fully satisfied their respective **Hurricane Calendar Year** Deductible(s) the **$50,000** Wind/Hail deductible will apply to loss or damage from each subsequent **Hurricane** in that **Calendar Year**.

**Deductible**
Each and every loss resulting from a **Named Storm,** other than a **Hurricane**, will be subject to the policy Wind/Hail deductible for Real and Personal Property – $50,000 per **Occurrence**